STATE OF NORTH CAROLINA v. ALPHONZO CLARK

No. 7315SC453

(Filed 11 July 1973)

1. **Indictment and Warrant § 13— bill of particulars — denial proper**
   Trial court in a murder prosecution did not abuse its discretion
   in denying defendant's motion for a bill of particulars.

2. **Jury § 7— non-capital case — number of peremptory challenges**
   In this murder prosecution where the court announced that under
   no circumstances would the death penalty be imposed on defendant on
   account of the charges for which he was being tried, the case ceased
   to be a capital case, and defendant was therefore entitled to only six
   peremptory challenges. G.S. 9-21(a).

State v. Clark

3. **Criminal Law § 76— admission of codefendant's confession — no prejudice to defendant**

    Trial court did not err in admitting into evidence the confession of a codefendant with whom defendant was tried where the confession made no reference to defendant by name and was not prejudicial to him.

4. **Criminal Law § 34— murder prosecution — evidence of assault by defendant — admissibility to show quo animo**

    In a prosecution for the murder of a student on school grounds, the trial court did not err in admitting evidence of an assault on another student occurring immediately before the alleged crime, since such evidence was competent to show *quo animo*, the intention or motive of defendant.

APPEAL by defendant from *Cooper, Judge,* 11 December 1972 Session of ORANGE Superior Court.

By indictment proper in form, defendant was charged with the murder of Donnie Riddle (Riddle) on 1 February 1972. In a separate indictment one Archie Parker was charged with the same offense and, over defendant's objection, the cases were consolidated for trial.

Evidence for the State tended to show:

On 1 February 1972, during school hours, defendant, Archie Parker (Archie) and several other nonstudents, armed with knives, went onto the Orange High School premises at Hillsborough looking for one Stewart Horn who allegedly had kidnapped Archie the night before.

Around 3:15 that afternoon Vernon F. Copeland (Copeland), assistant principal at Orange High School, left the school building to supervise the loading of school buses. Copeland went to the bus parking lot located between Stanford Junior High School (Stanford) and the high school. After supervising the loading of four buses, he heard a "commotion" and saw students "gathered around." He approached the group and saw that one student's eye was bleeding. Copeland took the injured student to get medication, then proceeded back to the bus parking lot where he saw some boys who were not students going through the buses. As Copeland entered the front door of a bus, two boys whom he recognized as Archie Parker and Alvin Parker (Alvin) went out the back door of the bus. Copeland approached the boys and Alvin said, "Mr. Copeland, what do you have to do with this," to which Copeland replied: "I have to protect the students. [N]o one is looking for trouble so I suggest you leave or else you will be picked up for trespassing."

At this point Copeland recognized the defendant and one Richard Crocker (Crocker) in company with Archie and Alvin. After Alvin spoke to Copeland, defendant, Archie, Alvin, Crocker and one Joe Clark (Joe) pulled open knives from their pockets and advanced toward Copeland. Copeland began to back up, then turned and walked toward the buses. Moments later a student yelled for Copeland to "look out." Copeland turned around and saw defendant, Archie, Alvin, Crocker and Joe running after him; Alvin was out in front swinging a golf club. Copeland motioned to Billy Goodwin (Goodwin), a student bus driver, to help him; Goodwin took a few steps toward Copeland and the five turned and chased Goodwin. They grabbed him, threw him on the ground and began beating him. Defendant stabbed Goodwin with a knife, inflicting a wound requiring hospitalization.

Copeland told a student to tell Mr. Claytor, principal at the high school, to call the police and then sought medical aid for Goodwin.

While Goodwin was being beaten, Riddle (decedent) was standing on the hill at Stanford, saw Goodwin being attacked, ran to his car, got a B.B. gun, and ran back toward the bus parking lot. Defendant and Archie grabbed Riddle and threw him on the ground. Riddle kicked Archie and Archie swung at Riddle and stabbed him in the abdomen with a knife. Defendant then picked up the B.B. gun, hit Riddle in the stomach with it and broke the gun over Riddle's head.

Riddle died approximately six hours after receiving the wounds aforesaid. A pathologist testified that on 2 February 1972 at about 9:00 a.m., he examined Riddle's body and found three different wounds. There was a tear and bruise on the left side of the scalp above the ear which produced bleeding into the tissues beneath the tear, bleeding into the cranial cavity under the skull bone and bleeding into the brain itself. The pathologist attributed this wound to a blunt blow to the head. The second wound was a stab wound to the upper abdominal region below the right rib cage. This wound had penetrated a small tip of the right lung, penetrated the pancreas, gone through the liver and had torn both major abdominal blood vessels. The third wound was a sharp cut on the deceased's left hand. The doctor expressed the opinion that death resulted from severe abdominal bleeding attributable to the laceration of the main abdominal vessels.

Defendant offered no evidence. A jury found defendant guilty of voluntary manslaughter and from judgment imposing prison sentence of twenty years, defendant appealed. (Archie Parker was also found guilty of voluntary manslaughter but his is a separate appeal.)

*Attorney General Robert Morgan by Howard P. Satisky, Assistant Attorney General, for the State.*

*Chambers, Stein, Ferguson & Lanning by Adam Stein for defendant appellant.*

BRITT, Judge.

[1]  Defendant assigns as error the denial of his motion for a bill of particulars, contending that the court violated G.S. 15-143 and his right to due process of law. This assignment has no merit. The statute clearly provides that a motion for a bill of particulars is addressed to the discretion of the trial judge and our courts have held consistently that the trial judge's ruling on the motion is not subject to review except for palpable and gross abuse of discretion. *State v. Overman,* 269 N.C. 453, 153 S.E. 2d 44 (1967) ; *State v. Robinson,* 15 N.C. App. 362, 190 S.E. 2d 270 (1972) ; cert. den. 281 N.C. 762. We perceive no abuse of discretion.

[2]  Defendant assigns as error the court's limiting him to six peremptory jury challenges. This assignment is without merit.

G.S. 9-21 (a) provides that in *capital* cases each defendant is entitled to fourteen peremptory challenges and in all other criminal cases, each defendant is entitled to only six peremptory challenges. A *capital* case has been defined as one in which the death penalty may, but need not necessarily, be imposed. *Lee v. State,* 31 Ala. App. 91, 13 So. 2d 583, 587 (1943). The case at bar ceased to be a capital case when, before the selection of jurors began, the court announced that under no circumstances would the death penalty be imposed on defendant on account of the charges for which he was being tried. Furthermore, assuming *arguendo* that defendant was entitled to fourteen peremptory challenges, it would appear that he waived his right to complain when he used only five peremptory challenges. See *State v. Allred,* 275 N.C. 554, 169 S.E. 2d 833 (1969).

[3]  Defendant assigns as error the admission into evidence of the confession of codefendant Archie Parker with whom de-

fendant was tried. Defendant contends that the confession implicated him and constituted prejudicial error, particularly when defendant had objected to a consolidated trial and in the absence of an instruction to the jury not to consider the confession as against defendant. We find no merit in this assignment.

The record discloses that the confession, provided through the testimony of Deputy McCullock, made no reference to defendant by name. Defendant contends that when McCullock referred to "one of the men" or made a similar reference in relating the confession, the jury was able to conclude that the reference was to defendant. We reject the contention. The evidence showed that several others in addition to defendant and Archie were together at various times during the day of the alleged offense and were present when the offense occurred. We hold that the confession was not prejudicial to defendant. See *State v. Jones*, 280 N.C. 322, 185 S.E. 2d 858 (1972).

[4]  Defendant assigns as error the admission of evidence pertaining to the assault on Billy Goodwin, contending that the only effect of evidence of that separate offense was to excite prejudice against defendant. This assignment has no merit.

The general rule is that evidence of a distinct, substantive offense is inadmissible to prove another and independent crime; but to this there is the exception that proof of the commission of other like offenses is competent to show the *quo animo*, intent, design, *scienter*, or to make out the *res gestae*, or to exhibit a chain of circumstantial evidence in respect to the matter on trial, when such crimes are so connected with the offense charged as to throw light on one or more of these questions. *State v. Harris*, 223 N.C. 697, 28 S.E. 2d 232 (1943).

The evidence complained of under this assignment tended to show that defendant and Parker went onto the Orange High School grounds on 1 February 1972 "looking for trouble." We hold that evidence of the assault on Goodwin was competent to show *quo animo*, the intention or motive of defendant. The assignment of error is overruled.

We have carefully considered the other assignments of error brought forward and argued in defendant's brief but finding them to be without merit, they too are overruled.

No error.

Judges HEDRICK and VAUGHN concur.