STATE OF NORTH CAROLINA v. JAMES WILLIAM PAGANO

No. 34

(Filed 17 April 1978)

1. **Criminal Law § 113.1— inaccuracy in recapitulating evidence—necessity for objection at trial**

    An inaccuracy in the court's recapitulation of the testimony of a witness will not be considered on appeal where it was not called to the attention of the court before the jury retired so as to afford the court an opportunity to make a correction.

2. **Criminal Law §§ 75, 75.11— in-custody statements—waiver of counsel—statement not incriminating per se**

    The evidence on voir dire supported the court's finding that defendant voluntarily and knowingly waived his right to counsel before making an in-custody statement to an officer, and the fact that defendant changed his mind during the interrogation and requested counsel, at which time the interrogation ceased and counsel was appointed, does not show that the waiver was not freely and voluntarily given. Furthermore, the admission of the statement was not erroneous in any event since it was not incriminating per se but could only have prejudiced defendant through its inherent implausibility.

3. **Criminal Law § 5— insanity—constitutionality of M'Naghten Rule**

    The established test of insanity as a defense to a criminal charge under the law of this State, known as the M'Naghten Rule, does not violate the due process clause of the Fourteenth Amendment to the U. S. Constitution.

4. **Criminal Law §§ 5, 112.6— defense of insanity—burden of proof—instructions**

    The trial judge properly placed upon the defendant the burden of proof on the question of his insanity.

APPEAL by defendant from *Webb, J.,* at the 21 August 1977 Criminal Session of NEW HANOVER.

Under indictments, each proper in form, the defendant was charged with and convicted of first degree burglary and first degree rape. He was sentenced on each count to life imprisonment, the sentences to run concurrently, the court recommending that the defendant be given psychiatric examination and treatment in the prison system.

The evidence for the State, uncontroverted except by the defendant's plea of not guilty, was ample to support the verdict as to each offense, being to the effect that, at 4:30 a.m., on 12 July 1977, a man broke and entered the home of the victim, wherein

she and her two small children were sleeping, with the intent to commit larceny and rape and did commit rape upon her with the use of a knife, and was also ample to identify the defendant as the perpetrator of these offenses. It is not necessary to the understanding of this appeal to recount the details of this evidence.

The defendant did not testify and all of his evidence was designed to establish his defense of insanity.

The defendant's mother testified to a long series of activities of the defendant, since infancy, indicating his violent temper and emotional instability and leading her to the opinion that he did not know right from wrong. On cross-examination, however, when asked if she was saying he did not know it was wrong to commit rape and to break into a house, she replied, as to each such inquiry, "No, I am not saying that."

Dr. Robert Weinstein, an expert in the field of psychiatry, and a witness for the defendant, testified that he examined the defendant and this examination led him to the conclusion that the defendant suffers from a mental disease or defect which he denominated, "borderline personality-organization." This, he said, is a medically recognized disease or defect of the mind which he characterized as "a stable instability." His examination of the defendant led him to the opinion that the defendant had been a "misfit" all of his life and never able to get along with people and, when his feelings were hurt or he became offended, he would become quite angry and tend to strike back at society in general. In the opinion of Dr. Weinstein, the defendant "knew while he was raping the person that what he was doing was wrong, but he didn't want to stop." The doctor testified he was not sure whether the defendant could or could not stop. In the opinion of Dr. Weinstein, the defendant "knew the quality of his actions and the nature of them, and he knew right from wrong." Specifically, the doctor testified that the defendant knew burglary and rape were wrong.

By stipulation, the defendant introduced in evidence a report of his examination and treatment, when he was 16 years of age, at the Portsmouth, Virginia, Psychiatric Center. This report stated that the defendant's "grip on reality" was shaky and, while he did not appear to be "blatantly psychotic or retarded," there were

definite indications of an incipient psychosis, so that the defendant then needed long-term therapy in a "structured institution." The report characterized him as "most difficult to manage at times," so that to confront him or make a demand upon him "would provoke a very stubborn or hostile or physically inappropriate reaction."

In rebuttal, the State offered the testimony of Dr. Robert Rollins, a member of the staff of Dorothea Dix Hospital and a specialist in psychiatry. Dr. Rollins testified, "As a result of my examination, I formed the opinion that James Pagano understood the nature and quality of his actions and knew right from wrong."

The court instructed the jury first to consider the following issue:

> "Was James William Pagano at the time of the alleged burglary and rape, by reason of a defect of reason or disease of the mind, incapable of knowing the nature and quality of the acts which he is charged with having committed, or, if he did know this, was he, by reason of such defect or disease, incapable of distinguishing between right and wrong in relation to such act?"

The jury answered this issue, "no," thus finding the defendant not insane, and then found him guilty of the two offenses charged. The defendant excepted to the submission of the above issue.

The defendant also excepted to that portion of the following instruction which is here enclosed in parentheses:

> "(I do charge you that a mental disease or defect is not sufficient. The disease or defect must have so impaired the defendant's mental capacity that he either did not know the nature and quality of his act or did not know it was wrong.) On the other hand, it need not be shown that the defendant lacked mental capacity with regard to all matters. Now, a person may be sane on every subject but one and yet, if his mental disease or defect with reference to that one subject rendered him unable to know the nature and quality of the act with which he is charged, or to know that the act was wrong, his defense is complete; that is, that his defense of insanity is complete."

*Rufus L. Edmisten, Attorney General, by David S. Crump, Special Deputy Attorney General, and Tiare Smiley Farris, Associate Attorney, for the State.*

*William G. Hussman, Jr., for defendant.*

LAKE, Justice.

[1] The defendant assigns as error that, in its review of the evidence in the charge to the jury, the trial court said the defendant's mother testified "that she didn't think he knew the difference between right and wrong, although she said he did know it was wrong to rape a woman." The record shows that this witness was asked, "Are you saying he didn't know it was wrong to rape?" The answer of the witness was: "No, I am not saying that. He has been told over the years that it was wrong to do these things and he would ask me why."

There is no indication in the record that this inaccuracy in the recapitulation of the testimony of this witness was called to the attention of the court before the jury retired so as to afford the court an opportunity to make a correction. In *State v. Virgil*, 276 N.C. 217, 230, 172 S.E. 2d 28 (1970), this Court, speaking through Justice Huskins, said, "[I]t is the general rule that objections to the charge in reviewing the evidence and stating the contentions of the parties must be made before the jury retires so as to afford the trial judge an opportunity for correction; otherwise they are deemed to have been waived and will not be considered on appeal." To the same effect, *see: State v. Dietz*, 289 N.C. 488, 500, 223 S.E. 2d 357 (1976); *State v. Hunt*, 289 N.C. 403, 409, 222 S.E. 2d 234, *death sentence vacated*, 429 U.S. 809 (1976); *State v. Case*, 253 N.C. 130, 116 S.E. 2d 429 (1960), *cert. den.*, 365 U.S. 830 (1961); *State v. Holder*, 252 N.C. 121, 113 S.E. 2d 15 (1960); *State v. Saunders*, 245 N.C. 338, 95 S.E. 2d 876 (1957). This assignment of error is, therefore, overruled.

[2] The defendant next contends that the trial court failed to make a finding with respect to whether the defendant voluntarily and knowingly waived his right to counsel before making a statement to the investigating officers, which statement was admitted in evidence. On the contrary, the record shows that the court, after conducting a voir dire examination of the officer in question, made the following findings of fact: "That Mr. Brown [the officer]

fully advised the defendant of his rights to have counsel present at any questioning, and his right to remain silent, and his right to have the State provide an attorney for him if he could not afford one himself.* * * [T]hat Mr. Brown furnished the defendant James William Pagano a form for a written waiver of his rights and Mr. Pagano signed this form, waiving his rights to remain silent, waiving his right to have a lawyer present during any questioning, and a few moments later during the interview * * * Mr. Pagano changed his mind, indicating that he did want an attorney, at which point Mr. Brown stopped questioning him and an attorney was appointed for Mr. Pagano. * * * [T]he defendant freely, voluntarily and understandingly waives his right to remain silent during that period and to have an attorney during that period."

These findings are supported by the uncontradicted evidence of the officer on the voir dire and are, therefore, conclusive. *State v. Gray*, 268 N.C. 69, 150 S.E. 2d 1 (1966), cert. den., 386 U.S. 911 (1967). The defendant's contention that the fact that he soon changed his mind and requested counsel shows that the waiver was not freely and voluntarily given is without substance.

Furthermore, the statement so made by the defendant to the investigating officer was not per se incriminating. In it he said that he was in South Carolina at the time of the alleged offense and when he went to the home of the victim four nights thereafter, at which time he was arrested by a waiting police officer, he went there at the request of some man he did not know, but who resembled the defendant in appearance, and who paid him $20.00 to go to the victim's house and see if she was at home, the defendant riding to the vicinity of the victim's house in a taxicab. The investigating officer was unable to find a cab driver or anyone else who could corroborate this story. The State's evidence was that he went to the victim's home on the second occasion as a result of a telephone conversation with her, initiated by him, in which the victim, at the suggestion of the investigating police officer, encouraged him to come to her home where the officer was waiting. The defendant's statement, so admitted, could only have prejudiced the defendant through its inherent implausibility. We perceive no error in its admission into evidence which would justify the granting of a new trial. This assignment of error is, therefore, overruled.

[3] The defendant's final, and principal, contention is that the established test of insanity as a defense to a criminal charge under the law of this State, known as the M'Naghten Rule, is unconstitutional in that it is a violation of the due process clause of the Fourteenth Amendment to the United States Constitution and that this Court should adopt the test proposed in the so-called "Model Penal Code" of the American Law Institute. Thus, he contends that the above quoted instruction of the trial court to the jury as to the test of insanity was error.

As recently as *State v. Jones,* 293 N.C. 413, 425, 238 S.E. 2d 482 (1977), we have reaffirmed our adherence to the M'Naghten Rule as the test of insanity as a defense to a criminal charge. We there said:

"It is thoroughly established in the law of this State, by numerous decisions of this Court, that the test of insanity as a defense to a criminal charge is whether the accused, at the time of the alleged act, was laboring under such a defect of reason, from disease or deficiency of the mind, as to be incapable of knowing the nature and quality of the act, or, if he does know this, was, by reason of such defect of reason, incapable of distinguishing between right and wrong in relation to such act. *State v. Cooper,* 286 N.C. 549, 569, 213 S.E. 2d 305 (1975); *State v. Humphrey,* 283 N.C. 570, 196 S.E. 2d 516 (1973); *State v. Johnson,* 256 N.C. 449, 452, 124 S.E. 2d 126 (1962); *State v. Swink,* 229 N.C. 123, 47 S.E. 2d 852 (1948)."

We continue to adhere to the views expressed in those cases concerning this matter.

[4] The trial judge properly placed upon the defendant the burden of proof on the question of his insanity. As Justice Ervin, speaking for this Court, said in *State v. Swink, supra,* "Since soundness of mind is the natural and normal condition of men, eveyone is presumed to be sane until the contrary is made to appear." In *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed. 2d 281 (1977), the Supreme Court of the United States held a New York statute "burdening the defendant in a New York State murder trial with proving the affirmative defense of extreme emotional disturbance as defined by New York law" does not violate the Due Process Clause of the Fourteenth Amendment

to the Constitution of the United States. We find no error in the above quoted charge of the trial judge with reference to the defense of insanity or in any other portion of his instructions to the jury concerning this matter.

In his brief the defendant asserts that the law of this State, as above stated, is defective, for the reason that it makes the test of insanity to rest upon a single symptom or manifestitation of mental illness and ignores other symptoms of such illness, citing Sobeloff, "Insanity and the Criminal Law: From M'Naghten to Durham, and Beyond," 41 A.B.A.J. 793, 795 (1955). His argument and the authority cited in support thereof rest upon a misconception of the question to be determined in the trial court. The issue, there to be determined, is not whether the defendant has *a* mental disease or defect, but whether he has the *kind or degree* of mental defect which State policy recognizes as giving him immunity to punishment for an act, for which act others are commanded by the law of the State to be punished. This assignment of error is overruled.

No error.