STATE OF NORTH CAROLINA v. PEGGY MASSEY LEONARD

No. 11

(Filed 28 November 1978)

1. Jury § 6— examination of jury as whole rather than individually—no abuse of court's discretion

  The trial court did not abuse its discretion in denying defense counsel permission to ask each prospective juror, rather than the entire panel, a question concerning their willingness to return a verdict of not guilty if defendant could prove her insanity.

**2. Jury § 7.13— no death penalty to be sought for first degree murder conviction — number of peremptory challenges**

In a first degree murder prosecution where the district attorney announced at the beginning of the trial that the state would not ask for the death penalty, the case lost its "capital nature" and the defendant was therefore not entitled to fourteen peremptory jury challenges.

**3. Jury § 7.8— refusal to acquit because of insanity — challenge for cause improperly denied**

The failure of the trial court to dismiss for cause three prospective jurors who indicated that they would not be willing to return a verdict of not guilty by reason of insanity even though defendant introduced evidence that would satisfy them that she was insane at the time she allegedly shot her sister, coupled with defendant's subsequent exhaustion of her peremptory challenges, forced defendant to accept a jury which could not be considered impartial, and she was therefore entitled to a new trial.

**4. Criminal Law § 5— insanity — burden of proof — issue properly submitted to jury**

The burden of proving insanity is properly placed on the defendant in a criminal trial, and even if the evidence of insanity presented by defendant is uncontradicted by the state, it is the defendant's burden to satisfy the jury of the existence of the defense. The state's evidence in this case consisting of testimony by witnesses who observed defendant at the time of the crime and who saw her flee, coupled with the presumption of sanity and the defendant's burden of proof, made the issue of insanity one which the court should properly have submitted to the jury.

**5. Criminal Law § 112.6— insanity — presumption — burden of proof on defendant — instructions proper**

The trial court's instruction that "sanity or soundness of mind is a normal condition of men and women; therefore, everyone is presumed sane until the contrary is made to appear," followed by an instruction on the test for insanity and a reminder that defendant had the burden of proving the existence of the defense was a proper instruction on the defense of insanity.

APPEAL by defendant from *Mills, J.*, at the 12 December 1977 Criminal Session of DAVIDSON Superior Court.

By an indictment proper in form, defendant was charged with the murder of her sister, Minnie Lee Kiger. The first attempt to try defendant ended in a mistrial on 3 November 1977. At her second trial she pled not guilty by reason of insanity.

The State's evidence tended to show:

Between 8:30 and 9:00 p.m. on 17 May 1977 the decedent, her son, and her daughter were seated in the living room of their

home in Lexington. Decedent was assisting her daughter with some schoolwork. A car drove into the driveway in front of the house and decedent went to the window to see who was in the car. She told the children that defendant was in the car. After locking the front door, she went out the side door, through the carport, and down the driveway toward defendant's car. Decedent carried nothing in her hands. The two children watched from the house's front window as their mother approached to within four or five feet of the car. At that point, defendant stepped out, shot decedent several times with a small rifle and then fled in a yellow car. The children summoned neighbors and police to assist their mother. Both children identified the defendant at trial and testified she was the assailant.

A member of the Davidson County Sheriff's Department testified concerning statements given to him by the two children on the night of the incident, both of which corroborated their testimony at trial. A second member of the sheriff's department testified that he arrested the defendant, who owned a yellow car, on the basis of these statements.

At the close of the state's evidence, the parties stipulated that decedent's death resulted from multiple gunshot wounds. Defendant then moved for dismissal on the ground that the state had failed to prove her sanity. This motion was denied.

Defendant did not testify; nor did she offer any evidence tending to contradict the state's version of the events culminating in the death of Minnie Lee Kiger. Evidence offered for the defendant related solely to the issue of sanity and tended to show the following:

Defendant had a history of mental illness dating back to 1967. At the request of her mother, defendant, in March, 1972, had been committed to Dorothea Dix Hospital for several weeks. On that occasion she had wandered away from home and had attacked her mother. After the shooting death of her sister defendant was again committed to Dorothea Dix Hospital for observation. Two expert psychiatrists who examined her testified that she was incapable of knowing right from wrong at the time of the shooting, that she suffered various delusions — among them, the belief that God had directed the killing of her sister, and that her thought processes were irrational.

The state offered no rebuttal of the testimony concerning insanity. The experts were cross-examined, however. The first of them testified on cross-examination that defendant understood the charges against her and could aid her attorney in preparing her defense. He further testified that "circumstances could arise that she would again assault somebody and that could result in death." The second expert was questioned about the length of time in which he had observed defendant; he stated that he interviewed her for 45 minutes in jail after the shooting.

At the close of all the evidence defendant again moved for dismissal, which was denied. Following arguments and instructions to the jury, defendant moved for a mistrial. This motion was also denied. The jury returned a verdict of guilty of first-degree murder and from judgment imposing a life sentence of imprisonment, defendant appeals.

*Attorney General Rufus L. Edmisten, by Associate Attorney Jane Rankin Thompson, for the State.*

*Robert B. Smith, Jr., for the defendant.*

BRITT, Justice.

[1]  By her first assignment of error defendant contends the trial court erred in denying her request that her counsel be allowed to ask each prospective juror, rather than the entire panel, the following question: "If the defendant should satisfy you by medical testimony that she was insane at the time of the alleged crime, would you be willing to return a verdict of not guilty even though the evidence would show she did kill her sister?"

We find no merit in this assignment. ". . . [A] motion to examine jurors individually, rather than collectively, is directed to the sound discretion which the trial court possesses for regulating the jury selection process." *State v. Thomas*, 294 N.C. 105, 115, 240 S.E. 2d 426 (1978); *State v. Young*, 287 N.C. 377, 214 S.E. 2d 763 (1975); *State v. Jarrette*, 284 N.C. 625, 202 S.E. 2d 721 (1974); 8 Strong's N.C. Index 3d, Jury § 6. We perceive no abuse of discretion in this case.

[2]  By her fourth assignment of error, defendant contends the court erred in not allowing her 14 peremptory jury challenges. This contention has no merit. In *State v. Barbour*, 295 N.C. 66, 70,

243 S.E. 2d 380 (1978), this court, speaking through Justice Copeland, said:

> "If, . . . , it is determined during jury selection in a prosecution for a crime which formerly had been punishable by death that the death penalty may not be imposed upon conviction, the case loses its capital nature, thereby rendering statutes providing for an increased number of peremptory challenges in capital cases inapplicable. *United States v. McNally*, 485 F. 2d 398 (8th Cir., 1973), *cert. denied*, 415 U.S. 978, 39 L.Ed. 2d 874, 94 S.Ct. 1566 (1974); *Martin v. State*, 262 Ind. 232, 314 N.E. 2d 60 (1974), *cert. denied*, 420 U.S. 911, 42 L.Ed. 2d 841, 95 S.Ct. 833 (1975); *State v. Haga*, 13 Wash. App. 630, 536 P. 2d 648, *cert. denied*, 425 U.S. 959, 48 L.Ed. 2d 204, 96 S.Ct. 1740 (1976); *People v. Watkins*, 17 Ill. App. 3d 574, 308 N.E. 2d 180 (1974). . . ."

*See also State v. Clark*, 18 N.C. App. 621, 197 S.E. 2d 605 (1973). In this case the district attorney announced at the beginning of the trial that the state would not ask for the death penalty, therefore, this case lost its "capital nature".

[3] By her second assignment of error, defendant contends the trial court erred in denying her motion to excuse for cause three prospective jurors who indicated that they would not be willing to return a verdict of not guilty by reason of insanity even though defendant introduced evidence that would satisfy them that she was insane at the time her sister was killed. This assignment has merit.

Defendant properly preserved her exception to the court's denial of her challenge for cause by (1) exhausting her peremptory challenges and (2) thereafter asserting her right to challenge peremptorily an additional juror. *State v. Young*, 287 N.C. 377, 214 S.E. 2d 763 (1975); *State v. Fox*, 277 N.C. 1, 175 S.E. 2d 561 (1970).

Challenges for cause are granted to ensure that defendants are tried by fair, impartial, and unbiased juries. *State v. Madden*, 292 N.C. 114, 232 S.E. 2d 656 (1977); *State v. Williams*, 275 N.C. 77, 165 S.E. 2d 481 (1969); *State v. Allred*, 275 N.C. 554, 169 S.E. 2d 833 (1969). A juror who reveals that he is unable to accept a particular defense or penalty recognized by law is prejudiced to

such an extent that he can no longer be considered competent. One "who is unwilling to accept as a defense, if proved, that which the law recognizes as such" should be removed from the jury when challenged for cause. 50 C.J.S., Juries § 227, p. 974; *see also:* 112 A.L.R. 531.

While this court has not previously dealt with the exact factual situation presented by defendant's second assignment, we have held in analogous situations that jurors who are predisposed with regard to the law or evidence in a case are properly dismissed for cause. In *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750 (1974), *vacated in part,* 428 U.S. 902, 96 S.Ct. 3203, 49 L.Ed. 2d 1205 (1976), three prospective jurors who stated that they could not find defendant guilty even though the state's evidence should show him guilty beyond a reasonable doubt were held to have been properly excused for cause as they were not impartial and thus could not render a fair verdict. This same principle has been applied in upholding the dismissal for cause of jurors whose conscientious objections to capital punishment precluded them from returning a verdict of guilty in a capital case regardless of the evidence. *State v. Squire,* 292 N.C. 494, 234 S.E. 2d 563 (1977).

In the case before us those jurors who stated that they could not acquit the defendant even though her insanity was proven to them were committed to disregarding the evidence presented to them as well as the court's instructions on the law arising from that evidence. The failure of the court to dismiss them for cause, coupled with the subsequent exhaustion of the defendant's peremptory challenges, forced her to accept a jury which cannot be considered impartial. For this reason she must be granted a new trial.

By various assignments of error defendant raises several issues which evolve from the trial court's handling of her insanity defense. She first contends that the court erred in placing the burden of proving insanity on her rather than the state. Secondly, she contends that her motion to dismiss should have been granted because the state failed to offer evidence of her sanity in its case-in-chief and failed to rebut the evidence of insanity produced on her behalf. For this same reason, she contends that it was error to instruct the jury on the presumption of sanity.

We find no merit in these contentions and hold that the motion to dismiss was properly denied. We also hold that the burden of proving insanity was properly placed on defendant and that the court correctly instructed the jury on the presumption of sanity. 6 Strong's N.C. Index 3d, Homicide § 7.

Defendant's motion for dismissal challenges the sufficiency of the evidence to go to the jury. *State v. Britt,* 285 N.C. 256, 204 S.E. 2d 817 (1974). She acknowledges that a criminal defendant in North Carolina is presumed sane until the contrary is made to appear by evidence produced at the trial. *State v. Hammonds,* 290 N.C. 1, 224 S.E. 2d 595 (1976). She contends, however, that this rebuttable presumption is dissipated by the introduction of evidence of insanity and that a motion to dismiss must be granted if the state thereafter fails to produce evidence of the sanity of the defendant.

[4]   We have repeatedly held, and we again reiterate the rule, that the burden of proving insanity is properly placed on the defendant in a criminal trial. Furthermore, a defendant must establish his insanity to the satisfaction of the jury if it is to provide a defense to a criminal charge. *State v. Pagano,* 294 N.C. 729, 242 S.E. 2d 825 (1978); *State v. Caldwell,* 293 N.C 336, 237 S.E. 2d 742 (1977); *State v. Harris,* 290 N.C. 718, 228 S.E. 2d 424 (1976); *State v. Hammonds, supra; State v. Caddell,* 287 N.C. 266, 215 S.E. 2d 348 (1975); *State v. Cooper,* 286 N.C. 549, 213 S.E. 2d 305 (1975); *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241 (1969), *rev'd as to death penalty,* 403 U.S. 948, 29 L.Ed. 2d 859, 91 S.Ct. 2283 (1971); *State v. Swink,* 229 N.C. 123, 47 S.E. 2d 852 (1948). The correctness of this rule is reinforced by the holding of the Supreme Court of the United States in *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed. 2d 281 (1977). There the court held that placing the burden on the defendant of proving the defense of extreme emotional disturbance as defined by New York law did not violate the Due Process Clause of the Fourteenth Amendment to the United States' Constitution. We likewise find that no unconstitutional burden is imposed upon defendants by the requirement of North Carolina law which compels them to prove the defense of insanity.

Defendant's argument fails to take into account the effect which placing the burden of proving insanity upon the defendant

has on the presumption of sanity. ". . . [T]he prosecution may assume, as the law does, that the defendant is sane. The assumption persists until challenged and the contrary is made to appear from circumstances of alleviation, excuse, or justification; and it is incumbent on the defendant to show such circumstances to the satisfaction of the jury, unless they arise out of the evidence against him. *S. v. Grainger*, 223 N.C. 716, 28 S.E. 2d 228 (1943). If no evidence of insanity be offered, the presumption of sanity prevails. And where the defendant offers evidence of his insanity, the state may seek to rebut it or to establish the defendant's sanity *by the presumption of law, or by the testimony of witnesses, or by both* (emphasis added)." *State v. Harris*, 223 N.C. 697, 703, 28 S.E. 2d 232, 237 (1943). Even if the evidence of insanity presented by the defendant is uncontradicted by the state, it is the defendant's burden to satisfy the jury of the existence of the defense. The credibility of the defense witnesses in this case was a proper matter for the jury. A diagnosis of mental illness by an expert is not in and of itself conclusive on the issue of insanity. *State v. Taylor*, 290 N.C. 220, 226 S.E. 2d 23 (1976); *State v. Potter*, 285 N.C. 238, 204 S.E. 2d 649 (1974).

Furthermore, the state did not, as defendant suggests, rely solely on the presumption of sanity. Testimony of witnesses who observed the defendant's actions at the time of the incident was offered. Those witnesses observed that defendant had sufficient presence of mind to flee after the shooting. This fact has been held to raise an inference of sanity. *State v. Journegan*, 185 N.C. 700, 117 S.E. 27 (1923). In addition, the diagnosis and opinion of each of defendant's expert witnesses was challenged by cross-examination. This cross-examination focused on the length of time each expert spent in interviewing defendant as well as on the factors which were observed in defendant's behavior and ultimately formed the basis for the experts' opinions. This evidence and cross-examination, coupled with the presumption of sanity and the defendant's burden of proof, make the issue of insanity one which the court was clearly justified in submitting to the jury.

[5] In charging the jury the trial judge informed them that defendant relied on the defense of insanity, which would be a complete defense to the crime of murder if proven to their satisfaction. He then made the following statement to which the defendant took exception: "I instruct you that sanity or soundness

of mind is a normal condition of men and women; therefore, everyone is presumed sane until the contrary is made to appear." The trial judge then stated the test for insanity and again reminded the jury that defendant had the burden of proving the existence of the defense to their satisfaction.

We find no error in this aspect of the charge. The instruction which was given constitutes an accurate and clear statement of the law on an issue raised by the defendant's plea and the evidence in the case. *State v. Watson*, 294 N.C. 159, 240 S.E. 2d 440 (1978); G.S. 1-180; 4 Strong's N.C. Index 3d, Criminal Law § 111.

We deem it unnecessary to discuss defendant's other assignments of error as they are not likely to recur upon the retrial of the case.

For the reasons stated, defendant is granted a

New trial.