STATE OF NORTH CAROLINA v. CLARENCE MELVIN BATTLE

No. 73A87

(Filed 6 April 1988)

1. **Homicide § 21.5— first degree murder—evidence of premeditation and deliberation sufficient**

   There was sufficient evidence of a deliberate and premeditated killing so as to support a judgment of first degree murder where the evidence at trial showed that defendant did not like the victim because of the victim's prior relationship with the defendant's wife; defendant, after taking his gun from his truck and prior to entering the residence where the killing occurred, stated that the victim was trouble and that the victim should not be allowed to come to that house without his permission; defendant initially entered the house without his gun, made sure the victim was inside, and returned to the porch, positioning himself behind a clothes dryer; defendant waited for the victim and shot him in the back as the victim walked down the porch steps; defendant twice stated immediately after the killing that the victim was dead, showing no regret or remorse or inclination to seek medical aid; defendant ordered the two witnesses to aid him in disposal of the body by burning it in a car; and defendant hid his bloodstained clothes in various places to avoid detection.

2. **Homicide § 21.6— murder by lying in wait—evidence sufficient**

   The evidence in a first degree murder prosecution clearly supported submitting murder by lying in wait to the jury where defendant brought a gun to a residence where he had previously seen the victim; defendant expressed animosity toward the victim and entered the residence without the gun to check on the victim's presence; defendant did not reveal the gun or indicate his plan of attack to the victim in any way; defendant then went out onto the porch, positioned himself behind a clothes dryer, and waited for the victim to come outside; when the victim entered the porch, defendant did not warn him of his presence but waited until the victim exited the porch area before shooting him in the back; and there was no evidence that the victim realized that defendant was about to shoot him.

3. **Homicide § 7— first degree murder—insanity—presumption of sanity and burden of proof**

   The trial court did not err in a first degree murder prosecution by not directing a verdict of not guilty by reason of insanity where the State did not introduce evidence as to defendant's sanity and the defendant introduced evidence that he was insane. There is a presumption of sanity in North Carolina, and it is the defendant's burden to satisfy the jury of the existence of the insanity defense, even if the evidence of insanity presented by the defendant is uncontradicted by an offer of proof by the State.

4. **Homicide § 28.1— murder—instruction on voluntary manslaughter based on self-defense denied—no error**

   The trial court did not err in a prosecution for first degree murder by not giving an instruction on voluntary manslaughter based on imperfect self-

defense where the record showed that defendant lay in wait for his victim, concealed by a clothes dryer, and shot the unarmed and unaware victim in the back as the victim walked away from the scene; there was no showing by defendant that his belief of a necessary killing, if any, was reasonable in any way; and the evidence showed that the victim was unaware of defendant's threat to kill him and that he did not in any way indicate an intent to harm defendant by any means.

**5. Criminal Law § 102— insanity—opening and closing arguments**

A defendant in a first degree murder prosecution was not improperly denied the right to the opening and closing arguments to the jury, despite having the burden of proof as to insanity, because defendant introduced evidence and the State therefore had the opening and closing arguments under Rule 10 of the General Rules of Practice for the District and Superior Courts.

**6. Homicide § 7— murder—insanity defense—burden of proof**

The State was not improperly relieved of proving all of the elements of the crime in a first degree murder prosecution by the placing of the burden of proof on defendant on the insanity issue.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a life sentence entered by *McClelland, J.*, at the 6 November 1986 Criminal Session of Superior Court, WAKE County. Heard in the Supreme Court 9 February 1988.

This case arises out of the 9 December 1985 shooting death of Billy Joe Ashe. The defendant was tried for first degree murder. The State relied on a killing with premeditation and deliberation and after lying in wait. The State presented evidence which tended to show that on the date in question several persons were attending a party at the residence of one Ronnie Kearney. Present at the party were Kearney, Billy Joe Ashe, Debra Poole, Carline Prince and Clarence Daniels. Around 4:30 p.m., defendant came to the house seeking help in pulling his car from a ditch. At that time defendant looked into the room where Billy Joe Ashe and the two women were sitting before leaving with Clarence Daniels to attend to his vehicle.

Shortly thereafter, defendant and Daniels were able to pull his car from the ditch and drive it to defendant's house. The defendant took his shotgun from his truck and carried it with him as he and Daniels walked back to Ronnie Kearney's residence. Daniels asked defendant at that time what he was going to do with the shotgun, to which defendant replied, "he had to get something straightened out." Defendant further stated that Billy Joe Ashe

"was trouble" and "should not have come" to the Kearney residence.

After Daniels and defendant arrived at Kearney's house the men went inside. Defendant went into Kearney's room where the victim was located and went back outside. Defendant did not have the shotgun with him at this time. Shortly thereafter, the two women present at the party left the house, speaking to defendant as they left the porch area of the home. Neither of the women saw defendant with a gun at that time. A few minutes later, Ronnie Kearney and Ashe prepared to leave. Clarence Daniels preceded the men onto the porch. He saw defendant take the gun and sit on the porch railing behind a clothes dryer that was located on the porch. Ashe then came out of the door talking to both Kearney and Daniels as he walked onto the porch. Defendant was positioned to the right and behind the victim as he exited the house, approximately fifteen feet away. At that time Kearney asked defendant what he was doing with that "cannon." Defendant told Kearney "not to worry about it." As Ashe walked down the front porch steps, defendant shot him in the back. The pellets punctured the victim's heart causing his death. There was no evidence Ashe ever saw the shotgun.

After the shooting, defendant twice stated "that mother-fucker is dead" as he attempted to enlist the aid of Kearney and Daniels in disposing of the body. Defendant told the men to put the victim in his car and to take the car and burn it with the body inside. Defendant threatened both men stating, "I don't want to shoot you but I will." When defendant put the shotgun down to pick up the body, Ronnie Kearney grabbed the gun and ran, throwing it into a nearby field. Authorities were called a short time thereafter and they subsequently arrested defendant. At the time of the arrest, defendant denied shooting Ashe. The blood-stained clothes of the defendant were found in a closet in his home as well as in the trunk of his car.

Defendant relied upon a defense of insanity, supporting this claim with the testimony of psychiatrists and psychologists. These experts testified the defendant manifested a psychotic disorder, specifically schizophrenia with disordered thinking and paranoid traits. One of them testified that in his opinion the defendant did not know the nature and quality of his act at the time he shot

Ashe or the difference between right and wrong in relation thereto.

The defendant was convicted of first degree murder. The State conceded there were no aggravating factors and did not seek the death penalty. The defendant appealed from the imposition of a life sentence.

*Lacy H. Thornburg, Attorney General, by Ellen B. Scouten, Assistant Attorney General, for the State.*

*Purser, Cheshire, Parker, Hughes & Dodd, by Gordon Widenhouse and David M. Lomas, for defendant appellant.*

WEBB, Justice.

By his first assignment of error, defendant contends that the trial court erred in denying his motion for dismissal of the charge of first degree murder. More specifically, defendant asserts that the evidence failed to establish that he intentionally caused the death of another after premeditation and deliberation or that he intentionally caused the death of another after lying in wait.

[1] Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. In support of a conviction for first degree murder based on premeditation and deliberation, it is incumbent upon the State to present substantial evidence that a defendant acted with willful and intentional malice in the killing of another after sufficient periods of premeditation and deliberation. The term "premeditation" means thought out beforehand for some length of time, however short. *State v. Myers,* 299 N.C. 671, 263 S.E. 2d 768 (1980). Similarly, the term "deliberation" means "an intention to kill, executed by the defendant in a cool state of blood, in furtherance of a fixed design to gratify a feeling of revenge, or to accomplish some unlawful purpose." *State v. Biggs,* 292 N.C. 328, 337, 233 S.E. 2d 512, 517 (1977).

Premeditation and deliberation essentially relate to one's mental processes; hence they are not readily susceptible to proof by direct evidence, instead requiring proof of circumstances surrounding the killing. In this case evidence of the manner in which the killing occurred, the defendant's pointing a shotgun at Ashe's back and shooting him, should support a finding that the killing

was with premeditation and deliberation. There is other evidence. In *State v. Calloway*, 305 N.C. 747, 291 S.E. 2d 622 (1982), this Court, citing other cases, stated that premeditation and deliberation may be inferred from evidence of one or more of the following circumstances: (1) want of provocation on the part of the deceased; (2) conduct and statements of defendant before and after the killing; (3) threats and declarations of the defendant before and after the killing; (4) ill-will or previous difficulty between the parties; (5) dealing of lethal blows after the deceased had been felled and rendered helpless; and (6) evidence that the killing was done in a brutal manner.

The evidence presented at trial shows that defendant did not like the victim because of the victim's prior relationship with the defendant's wife before they were married and did not want him at the Kearney residence. After taking his gun from his truck and prior to entering the Kearney residence, defendant stated that the victim "was trouble" and that he "should not be allowed to come to the house without his permission."

The evidence further showed that defendant initially entered the house without his gun, making sure the victim was inside, before returning to the porch, positioning himself behind a clothes dryer, waiting for the victim and shooting him in the back as he walked down the porch steps. Immediately after the killing, defendant twice stated "that mother-fucker is dead," showing no regret or remorse or inclination to seek medical aid. In fact, he ordered the two witnesses to aid him in disposal of the body by burning it in a car. Further evidence was taken showing defendant's actions after the crime, which consisted of the defendant's hiding his bloodstained clothes in various places to avoid detection.

The cumulative effect of these actions and statements by the defendant is more than sufficient evidence of a deliberate and premeditated killing so as to support a judgment of first degree murder. *State v. Mize*, 316 N.C. 48, 340 S.E. 2d 439 (1986).

[2] Defendant also contends there was not sufficient evidence to submit to the jury that the murder was perpetrated by lying in wait.

As previously recited, the evidence shows that defendant brought a gun to a residence where he had previously seen Mr.

Ashe. After expressing animosity toward Mr. Ashe, the defendant entered the residence without the gun, checking as to the victim's presence. Defendant did not reveal the gun or indicate his plan of attack to the victim in any way. The evidence further shows that the defendant then went out onto the porch, positioned himself behind a clothes dryer and waited for Mr. Ashe to come outside. When Ashe entered the porch area, defendant did not warn him of his presence, instead waiting until Mr. Ashe exited the porch area before shooting him in the back. There is no evidence Mr. Ashe realized that defendant was about to shoot him.

In *State v. Brown*, 320 N.C. 179, 358 S.E. 2d 1 (1987), this Court recently dealt with lying in wait. We said:

> Murder perpetrated by lying in wait "refers to a killing where the assassin has stationed himself or is lying in ambush for a private attack upon his victim." *State v. Allison*, 298 N.C. 135, 147, 257 S.E. 2d 417, 425 (1979).

This Court further stated that the assassin need not be concealed, nor need the victim be unaware of his presence as long as the victim does not know of the defendant's purpose to kill him. *Allison*, 298 N.C. at 148, 257 S.E. 2d at 425. The evidence of the defendant's action clearly supported the court's action in submitting murder perpetrated by lying in wait to the jury. This assignment of error is overruled.

[3] In his second assignment of error, the defendant argues the court should have directed a verdict of not guilty by reason of insanity. The State did not introduce evidence as to the defendant's sanity and the defendant, relying on *State v. Jones*, 309 N.C. 214, 306 S.E. 2d 451 (1983), argues that he introduced uncontradicted testimony which was manifestly credible as a matter of law that he was insane. For this reason, says the defendant, he was entitled to have the court direct a verdict in his favor on the insanity issue. *Jones* dealt with the finding of a mitigating factor. There was not a presumption involved. There is a presumption in this case which makes *Jones* inapplicable.

It is well settled in this jurisdiction that "every person is presumed sane until the contrary is shown, and the defendant has the burden of proving his insanity . . . to the satisfaction of the jury." *State v. Evangelista*, 319 N.C. 152, 161, 353 S.E. 2d 375, 382

(1987). The State may rebut a defendant's claim of insanity by such presumption of law, or by testimony of witnesses, or by both. *State v. Harris*, 223 N.C. 697, 28 S.E. 2d 232 (1943). It is the defendant's burden to satisfy the jury of the existence of the insanity defense, even in the instance where the evidence of insanity presented by the defendant is uncontradicted by an offer of proof by the State. *State v. Potter*, 285 N.C. 238, 204 S.E. 2d 649 (1974).

As recognized by the defendant, this Court has repeatedly declined to change the presumption of sanity or the rule that places the burden of proof on this issue on the defendant. *See Evangelista*, 319 N.C. 152, 353 S.E. 2d 375; *Mize*, 315 N.C. 285, 337 S.E. 2d 562; *State v. Leonard*, 296 N.C. 58, 248 S.E. 2d 853 (1978). We decline to change the rule in this case. This assignment of error is overruled.

[4] By his third assignment of error, defendant contends the trial court should have given an instruction on voluntary manslaughter based on imperfect self-defense.

A defendant is entitled to an instruction on voluntary manslaughter based on imperfect self-defense only if evidence is introduced from which the following may be found:

(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

(2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness.

*State v. Wallace*, 309 N.C. 141, 147, 305 S.E. 2d 548, 552-53 (1983) (quoting *State v. Bush*, 307 N.C. 152, 158, 297 S.E. 2d 563, 568 (1982) ).

We cannot find any evidence that would justify an instruction of imperfect self-defense. Rather, the record shows that defendant lay in wait for his victim, concealed by a clothes dryer, and shot an unarmed and unaware victim in the back as he walked away from the scene. There is no showing by defendant that his belief of a necessary killing, if any, was reasonable in

any way. The evidence showed that the victim was unaware of defendant's intent to kill him and that he did not in any way indicate an intent to harm defendant by any means. Evidence that defendant believed it necessary to kill the victim before the victim killed him is not sufficient to justify the proffered instruction as to voluntary manslaughter.

We conclude as a matter of law that there was no evidence of imperfect self-defense so as to justify a charge of manslaughter based thereon. The trial court did not err in failing to so instruct the jury. This assignment of error is overruled.

[5] In his fourth assignment of error the defendant contends that he was improperly denied the right to the opening and closing arguments to the jury. The defendant, relying on *Bowman v. Development Co.*, 183 N.C. 249, 111 S.E. 162 (1922); *Elks v. Hemby*, 160 N.C. 20, 75 S.E. 854 (1912); and *Love v. Dickerson*, 85 N.C. 5 (1881), argues that he had the burden of proof as to insanity and this gave him the right to open and close. The cases relied on by the defendant were decided before the adoption of the General Rules of Practice for the District and Superior Courts. Rule 10 of these Rules provides that if the defendant introduces evidence the State will have the opening and closing arguments. The defendant introduced evidence in this case. The State had the right to the opening and closing arguments.

[6] In his fifth assignment of error the defendant contends the State was relieved of proving all the elements of the crime by placing the burden of proof on the defendant on the insanity issue. He says this is so because proof of first degree murder requires proof of premeditation, deliberation and intent which is proof of a criminal intent. Defendant argues the insanity defense is directed at proving the lack of criminal intent and that by placing the burden of proof on a defendant who uses this defense, the State is relieved of proving essential elements of the crime in violation of *Francis v. Franklin*, 471 U.S. 307, 85 L.Ed. 2d 344 (1985); *Mullaney v. Wilbur*, 421 U.S. 684, 44 L.Ed. 2d 508 (1975) and *In re Winship*, 397 U.S. 358, 25 L.Ed. 2d 368 (1970). The defendant relies on a dissent by Justice Brennan in *Rivera v. Delaware*, 429 U.S. 877, 50 L.Ed. 2d 160 (1976), in which the United States Supreme Court dismissed for want of a substantial federal question an appeal which challenged a Delaware statute

St. Paul Fire & Marine Ins. Co. v. Freeman-White Assoc., Inc.

which placed the burden of proving insanity on the defendant. We have rejected this argument by the defendant in *Evangelista*, 319 N.C. 152, 353 S.E. 2d 375; *Mize*, 315 N.C. 285, 337 S.E. 2d 562; and *State v. Heptinstall*, 309 N.C. 231, 306 S.E. 2d 109 (1983). We decline to overrule these cases. This assignment of error is overruled.

No error.