STATE OF NORTH CAROLINA v. ANTONIO LEE JACKSON AND
RODRICO LEWIS JACKSON

No. COA10-1566

(Filed 6 September 2011)

## 1. Jury—venire—underrepresentation of race

The trial court did not err by denying a motion by defendants in an armed robbery trial to discharge the jury venire based on underrepresentation of their race. Without more, the fact that only three of sixty people in the jury venire were African-American was not sufficient to show that the underrepresentation was due to systematic exclusion.

## 2. Robbery—sufficiency of evidence—credibility of witnesses—acting in concert

The trial court did not err by denying motions by two defendants to dismiss armed robbery charges. The determination of the credibility of witnesses and the weight of the evidence is for the jury to determine and there was substantial evidence to support an acting in concert theory.

## 3. Robbery—sufficiency of evidence—perpetrator of offense

The trial court did not err by refusing to dismiss an armed robbery prosecution for insufficient evidence that defendant Jackson was the perpetrator of the offense. The combined testimony of two witnesses was sufficient to raise an appropriate question for the jury.

Appeal by Defendants from judgments entered 19 August 2010 by Judge Carl R. Fox in Orange County Superior Court. Heard in the Court of Appeals 28 April 2011.

*Roy Cooper, Attorney General, by Angel E. Gray, Assistant Attorney General, and June S. Ferrell, Assistant Attorney General, for the State.*

*James W. Carter, for Defendant Antonio Lee Jackson, and Thomas R. Sallenger, for Defendant Rodrico Lewis Jackson.*

THIGPEN, Judge.

Rodrico Lewis Jackson ("Rodrico") and Antonio Lee Jackson ("Antonio")[1] (together, "Defendants") were convicted of robbery with a dangerous weapon. On appeal, they contend that the trial court erred by denying their motion to discharge the jury venire because their race was disproportionately underrepresented and by denying their motions to dismiss for insufficiency of the evidence. We find their arguments without merit, and conclude Defendants had a fair trial, free from error.

The evidence of record tends to show that on 1 May 2009, Antonio met Justin Dent while Dent was walking his dog in Hillsborough, North Carolina. Antonio asked Dent about his new iPhone and Dent allowed him to look at it; Antonio then handed it back to him. Several friends were visiting Dent's Ashford Lake apartment that day, and Dent invited Antonio to visit. Antonio and another person visited Dent's apartment later that day.

Katina Jeffries, Antonio's girlfriend, drove a burgundy Chrysler and frequently gave Defendants rides in her car. Although Jeffries did not remember the exact date, she recalled giving Defendants a ride one day from Efland to Ashford Lakes apartments in Hillsborough around midday.

At midday on 5 May 2009, Dent said Defendants visited his Ashford Lakes apartment. Dent's dog began barking, and Dent stepped out of the front door to talk to Defendants. He closed the door behind him to keep the dog in the apartment. Dent recognized Antonio from their meeting a few days earlier, but he had not seen Rodrico before. Dent noticed a burgundy sedan in the parking lot with people in it.

Antonio told Dent he planned to meet someone in the area and asked if he could use Dent's iPhone to call and ask about his ride.

---

1. It is not customary for this Court to refer to Defendants by their first names. However, in this case, we refer to Defendants as such for ease of reading, as Defendants have the same surnames.

Dent let Antonio use his iPhone, after entering the code to unlock it, and Antonio began talking and walking away with Dent's iPhone. Dent noticed the iPhone still showed the home screen, which meant that Antonio had not actually made a call. Dent became suspicious and began following Antonio. Rodrico stepped in front of Dent, pulled out a gun, pointed it at his face, and stated, "Get the [expletive deleted] back[.]" Dent described the gun as a "small revolver, possibly a .22[.]" At that point, Antonio started running away, and Rodrico slowly started to walk backwards, turned around, and began running.

On 19 August 2010, a jury found both Defendants guilty of robbery with a dangerous weapon, and the court entered judgments consistent with the jury's verdicts, sentencing Antonio, a prior record level II offender, in the presumptive range to 65 to 87 months incarceration, and sentencing Rodrico, a prior record level III offender, in the presumptive range to 92 to 120 months incarceration. From these judgments, Defendants appealed.

### I: Disproportionate Jury Representation

**[1]** In Defendants' first argument on appeal, they contend the trial court erred in denying their motion to discharge the jury venire. Specifically, Defendants argue the trial court erred because their race was disproportionately underrepresented in the composition of the jury venire in violation of their State and federal constitutional rights. We disagree.

"Our state and federal Constitutions protect a criminal defendant's right to be tried by a jury of his peers." *State v. Williams*, 355 N.C. 501, 548, 565 S.E.2d 609, 637 (2002), *cert. denied*, 537 U.S. 1125, 123 S. Ct. 894, 154 L. Ed. 2d 808 (2003) (quotation omitted). "This constitutional guarantee assures that members of a defendant's own race have not been systematically and arbitrarily excluded from the jury pool which is to decide [his] guilt or innocence." *Id.* (quotation omitted). "However, the Sixth Amendment does not guarantee a defendant the right to a jury composed of members of a certain race or gender." *Id.*, 355 N.C. at 549, 565 S.E.2d at 637 (quotation omitted).

The burden is upon the defendant to show a *prima facie* case of racial systematic exclusion. *State v. Brower*, 289 N.C. 644, 652-54, 224 S.E.2d 551, 558-59 (1976), *motion for reconsideration denied*, 293 N.C. 259, 243 S.E.2d 143 (1977). In order for a defendant to establish a *prima facie* violation for disproportionate representation in a venire, he must show the following:

(1) that the group alleged to be excluded is a "distinctive" group in the community;

(2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and

(3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Williams*, 355 N.C. at 549, 565 S.E.2d at 637 (quoting *Duren v. Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664, 668, 58 L. Ed. 2d 579, 587 (1979).

At trial, Defendants argued that because there were sixty people in the venire and only three African-Americans, the venire was not representative of Orange County. Defendants stated they did not have any demographic data to present to the court with regard to the racial composition of Orange County. However, without any data to corroborate their assertion, Defendants said the African-American population in Orange County was "certainly greater than . . . five percent." Defendants made a motion to strike the jury panel and moved for a mistrial, stating their constitutional rights were violated. The trial court denied Defendants' motion.

On appeal, Defendants' argue that the trial court erred by denying their motion because only three out of sixty people in the venire were African-American. We believe this alone is insufficient to support the second and third prongs set forth in *Williams* to establish a *prima facie* violation for disproportionate representation in a venire.

With respect to the first prong of the *prima facie* test, Defendants have met their burden. African-Americans are considered a constitutionally cognizable group for Sixth Amendment fair cross-section purposes. *See State v. Golphin*, 352 N.C. 364, 393, 533 S.E.2d 168, 191 (2000), *cert. denied*, 532 U.S. 931, 121 S. Ct. 1379, 149 L. Ed. 2d 305 (2001) ("There is no question . . . that defendants satisfied the first prong . . . because African-Americans are unquestionably a 'distinct' group for purposes of [this] analysis").

However, with respect to the second prong, Defendants failed to produce any evidence at trial that the representation of African-Americans in the venire from which the jury was selected "[was] not fair and reasonable in relation to the number of such persons in the community." *Williams*, 355 N.C. at 549, 565 S.E.2d at 637. Defendants

STATE v. JACKSON

[215 N.C. App. 339 (2011)]

stated that the African-American population in Orange County was "certainly greater than . . . five percent." However, Defendants produced no evidence to support their assertion.[2] The opinion of the defense attorneys as to what they believed to be the percentage of African-Americans in Orange County is insufficient to show that the representation of African-Americans in the venire from which the jury was selected was not fair and reasonable in relation to the number of African-Americans in the community. *Compare, Duren*, 439 U.S. at 364-66, 99 S. Ct. at 668-69, 58 L. Ed. 2d at 587-88 (1979) (stating "the defendant must demonstrate the percentage of the community made up of the group alleged to be underrepresented" and concluding, "[g]iven petitioner's proof [from census figures] that in the relevant community slightly over half of the adults are women, we must disagree with the conclusion of the court below that jury venires containing approximately 15% women are 'reasonably representative' of this community").[3]

With respect to the third prong, Defendants have presented no evidence showing that the alleged deficiency of African-Americans in the venire was because of the systematic exclusion of this group in the jury selection process. Both Defendants contend on appeal that the fact that only three out of sixty potential jurors in the venire were African-American is sufficient to show systematic exclusion of the group. This contention falls short of satisfying the requirement of the third prong established in *Duren*. "The fact that a particular jury or a series of juries does not statistically reflect the racial composition of the community does not in itself make out an invidious discrimination forbidden by the [Equal Protection] Clause." *Bowman*, 349 N.C. at 469, 509 S.E.2d at 435 (quotation omitted). We conclude the fact, without more, that only three of sixty people in the jury venire were African-American is insufficient to show that the underrepresentation was due to systematic exclusion of the group in the jury-selection process. *Compare Duren*, 439 U.S. at 366-67, 99 S. Ct. at 669, 58 L. Ed. 2d at 588 (holding that an "undisputed demonstration that a.

---

2. *Compare, Williams*, 355 N.C. at 549, 565 S.E.2d at 638 (The defendant provided data from statistics that "the African-American population of Wake County was 20.8% in 1997 and that African-Americans made up 8.67% of the jury pool, for a difference of 12.13%); *State v. Bowman*, 349 N.C. 459, 467, 509 S.E.2d 428, 434 (1998), *cert. denied*, 527 U.S. 1040, 119 S. Ct. 2403, 144 L. Ed. 2d 802 (1999) (showing data creating a difference of 16.17%); *State v. Price*, 301 N.C. 437, 447-48, 272 S.E.2d 103, 110-11 (1980) (showing data from statistics and census data).

3. The Court in *Duren* recognized women as a "distinctive" group for Sixth Amendment fair cross-section purposes.

large discrepancy [in the number of women versus the number of men in the jury venire] occurred not just occasionally, but in every weekly venire for a period of nearly a year manifestly indicates that the cause of the underrepresentation was systematic[,]" and stating the system of exclusion was further supported by evidence that "[in] the construction of the jury wheel from which persons are randomly summoned for service[,] [l]ess than 30% of those summoned were female[,]" and "at the summons stage women were not only given another opportunity to claim exemption, but also were presumed to have claimed exemption when they did not respond to the summons").

Overall, the only evidence Defendants offered in support of their contention that their race was disproportionately underrepresented in the composition of the jury venire was an opinion by the defense attorneys regarding what they believed to be the percentage of African-Americans in Orange County and the fact that only three out of sixty people in the jury venire were African-American. This alone does not establish a *prima facie* violation for disproportionate representation in a venire.

## II: Motion to Dismiss

[2] In Defendants' second argument on appeal, they contend the trial court erred in denying their motions to dismiss the charge of robbery with a dangerous weapon. We disagree.

When reviewing a challenge to the denial of a defendant's motion to dismiss a charge on the basis of insufficiency of the evidence, this Court determines "whether the State presented substantial evidence in support of each element of the charged offense." *State v. Chapman*, 359 N.C. 328, 374, 611 S.E.2d 794, 827 (2005) (quotation omitted). "Substantial evidence is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion." *State v. Abshire*, 363 N.C. 322, 328, 677 S.E.2d 444, 449 (2009) (quotation omitted). "In this determination, all evidence is considered in the light most favorable to the State, and the State receives the benefit of every reasonable inference supported by that evidence." *Id.* (quotation omitted). Additionally, a "substantial evidence inquiry examines the sufficiency of the evidence presented but not its weight," which remains a matter for the jury. *State v. McNeil*, 359 N.C. 800, 804, 617 S.E.2d 271, 274 (2005) (quotation omitted). Thus, "[i]f there is substantial evidence— whether direct, circumstantial, or both—to support a finding that the

offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *Id.* (quotation omitted).

"The essential elements of robbery with a dangerous weapon are: (1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of a person is endangered or threatened." *State v. Haselden*, 357 N.C. 1, 17, 577 S.E.2d 594, 605, *cert. denied*, 540 U.S. 988, 124 S. Ct. 475, 157 L. Ed. 2d 382 (2003); *see also* N.C. Gen. Stat. § 14-87(a) (2009).

The following are the elements of acting in concert: "(1) being present at the scene of the crime, and (2) acting together with another person who commits the acts necessary to constitute the crime pursuant to a common plan or purpose." *State v. Poag*, 159 N.C. App. 312, 320, 583 S.E.2d 661, 667, *appeal dismissed, disc. review denied*, 357 N.C. 661, 590 S.E.2d 857 (2003) (citation omitted).

### i: Defendant Antonio Jackson

Antonio first argues there was insufficient evidence to support the charge of robbery with a dangerous weapon because Dent was not a credible witness and because Jeffries only remembered taking Defendants to Dent's apartment on one day, but not specifically on 5 May 2009. These arguments fail. The "[d]etermination of [a] witness's credibility is for the jury[.]" *State v. Espinoza-Valenzuela*, ___ N.C. App. ___, ___, 692 S.E.2d 145, 153 (2010) (citation omitted). Likewise, a determination of the weight of the evidence is a matter for the jury. *McNeil*, 359 N.C. at 804, 617 S.E.2d at 274.

Antonio next argues the evidence was insufficient to support the "common plan or purpose" element of acting in concert. A defendant must have "a common purpose to commit a crime; it is not strictly necessary, however, that the defendant share the intent or purpose to commit the particular crime actually committed." *State v. Herring*, 176 N.C. App. 395, 400, 626 S.E.2d 742, 746, *disc. review denied, appeal dismissed*, 360 N.C. 651, 637 S.E.2d 183-84 (2006), *cert. denied*, 549 U.S. 1293, 127 S. Ct. 1848, 167 L. Ed. 2d 342 (2007) (quotation omitted). Moreover, "[t]he communication or intent to aid, if needed, does not have to be shown by express words of the defendant but may be inferred from his actions and from his relation to the actual perpetrators." *State v. Sanders*, 288 N.C. 285, 291, 218 S.E.2d 352, 357 (1975), *cert. denied*, 423 U.S. 1091, 96 S. Ct. 886, 47 L. Ed. 2d

102· (1976) (citations omitted). However, "[a] defendant's mere presence at the scene of the crime does not make him guilty . . . even if he sympathizes with the criminal act and does nothing to prevent it." *State v. Capps*, 77 N.C. App. 400, 402-03, 335 S.E.2d 189, 190 (1985).

Here, Antonio was not merely present at the scene. There is evidence that Antonio took Dent's iPhone and began walking, then running, away from Dent, while pretending to make a phone call. *Compare, Capps*, 77 N.C. App. at 402, 335 S.E.2d at 190 (The defendant did not act in concert when evidence showed that the defendant was neither aware of nor intended to—and in fact did not—participate in a felonious larceny; the defendant was merely present). Although the record does not reveal whether Antonio shared the intent or purpose to rob Dent *with a dangerous weapon*, this is not a necessary element under the theory of acting in concert. *See Herring*, 176 N.C. App. at 400, 626 S.E.2d at 746.

Based on the foregoing, we believe there was substantial evidence submitted at trial to support the elements of the offense of robbery with a dangerous weapon under a theory of acting in concert, such that the question of whether Antonio acted in concert with Rodrico was appropriately a question for the jury. Therefore, we find no error in the trial court's denial of Antonio's motion to dismiss.

### ii: Defendant Rodrico Jackson

[3] Rodrico argues there was insufficient evidence to support the charge of robbery with a dangerous weapon based on the identity element—that Rodrico was, in fact, the perpetrator of the crime. *See McNeil*, 359 N.C. at 804, 617 S.E.2d at 274. Specifically, Rodrico contends the insufficiency of the evidence lies in Dent's testimony that he was not 100% certain that Rodrico was the second man who came to his apartment on 5 May 2009; Dent was only 70% certain.

Rodrico cites *State v. Miller*, 270 N.C. 726, 154 S.E.2d 902 (1967), for the proposition that, as a general rule, the credibility of witnesses and the weight to be given their testimony is exclusively a matter for the jury, but in exceptional cases, testimony is inherently unreliable. In *Miller*, the Supreme Court reversed a trial court's order on a motion to dismiss because there was "a complete failure of the State's evidence to connect the defendant *Miller* with the offense with which he is charged[,]" except for the testimony of Melton, a 16-year-old boy, who identified Miller out of a lineup of men, which besides Miller and his co-defendant, consisted of "neatly dressed police officers and two prisoners held on the charge of drunkenness." *Miller*, 270 N.C. at

STATE v. JACKSON

[215 N.C. App. 339 (2011)]

728-32, 154 S.E.2d at 903-05. Melton was "never closer than 286 feet from" the perpetrators of the crime—"who[] he saw running along the side" of a building—and Melton's description to the police was substantially different from Miller's actual appearance. *Miller*, 270 N.C. at 732, 154 S.E.2d at 905. The Court stated "the distance was too great for an observer to note and store in memory features which would enable him, six hours later, to identify a complete stranger with the degree of certainty which would justify the submission of the guilt of such person to the jury." *Id.*

We believe *Miller* is distinguishable from the present case. Here, Dent was face-to-face with the men outside his apartment door. The great distance between the witness and the perpetrators in *Miller* is not a factor in this case. Moreover, unlike *Miller* in which there was no other evidence identifying the defendant, Jeffries corroborated Dent's testimony that Rodrico was, in fact, the perpetrator of the offense. Jeffries testified that she drove Rodrico and Antonio to Dent's apartment complex in a burgundy Chrysler, and Dent testified he saw a burgundy sedan in the parking lot of his apartment complex during the perpetration of the robbery. We believe the combined testimony of Jeffries and Dent is sufficient evidence, such that the question of whether Rodrico was the perpetrator of the offense, was appropriately a question for the jury. Therefore, we conclude the trial court did not err in denying Rodrico's motion to dismiss.

For the foregoing reasons, we conclude Defendants had a fair trial, free from error.

NO ERROR.

Judges CALABRIA and ERVIN concur.