An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-697

Filed 6 August 2025

Rutherford County, No. 20CRS053136-800

STATE OF NORTH CAROLINA

v.

DELARRIO LAQUONE GOODE

Appeal by Defendant from Judgment entered 5 December 2023 by Judge J. Thomas Davis in Rutherford County Superior Court. Heard in the Court of Appeals 9 April 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Colleen M. Crowley, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Kathryn L. VandenBerg, for Defendant-Appellant.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Delarrio Laquone Goode (Defendant) appeals from a Judgment entered upon a jury verdict finding him guilty of First-Degree Murder. The Record, including evidence adduced at trial, tends to reflect the following:

On 20 November 2020, Defendant met Taylor Weaver, Destiny Murray, and Daryl Price at a Dollar Store. Defendant discussed buying drugs from Price. During these discussions, Murray served as the go-between for Defendant and Price who were not on speaking terms. Murray testified Defendant and Price arranged to meet up later in the day. According to Murray, Price intended to sell drugs to Defendant. When Murray and Price arrived at T.J. Hodge's house later that day, Price brought a gun with him because he was hesitant to meet Defendant since "they hadn't been getting along[.]"

Defendant was standing in Hodge's living room when Price, Weaver, and Murray arrived. Lakelia Dickey, a long-time friend of Defendant's, was also present at Hodge's home. Dickey testified she had overheard a phone call between Defendant and Murray prior to Price's arrival at Hodge's house. According to Dickey, Murray told Defendant "that [Price] had money and drugs on him and for [Defendant] to just look out for her." Based on the phone call, Dickey believed there "was going to be a problem." Dickey told Defendant "not to do whatever he planned to do." Murray also testified Defendant asked her if Price carried money prior to Price arriving at the house.

Both Weaver and Murray entered the home and walked to the back bedroom, while Price sat in a living room chair. An altercation between Defendant and Price ensued. Weaver testified she saw Defendant pull out a gun before she walked to the back bedroom. Murray also saw Defendant in the living room with a gun on the table.

From the back bedroom she heard arguing and a gunshot. Dickey stood in the doorway of the back bedroom with the only clear view into the living room. She observed Price sitting in a chair while Defendant stood over him with a gun pointed at him. Dickey heard Defendant demanding money from Price. Defendant then took Price's gun. Dickey turned her head and heard two gunshots. Dickey walked back into the living room and saw blood on Price's chest. She heard Price say "Please, just let me leave. I won't call the police." Defendant yelled at Price to get out of the house and grabbed Price's arm to get him in Weaver's car. Price died on the way to the hospital.

Dickey and Weaver left Price's body in a field. Defendant called Dickey and asked, referring to Price, "Did the dog make it to the pound?" Upon learning Price was dead, Defendant asked Weaver to pick him up. Murray testified Defendant cleaned himself off before leaving Hodge's house with Dickey and Weaver. Shortly thereafter, Weaver jumped out of the car because she was afraid Defendant might kill her. Weaver ended up at an Econo Lodge—a motel—where a bail bondsman, and later the police, went searching for Defendant and Price.

Defendant took the SIM cards from Dickey's and Price's phones and threw them out the car window. Defendant also disposed of other witnesses' phones. Defendant and Dickey picked Murray up. Sometime after midnight, Defendant drove Dickey and Murray to collect Price's body from the field. Defendant then drove to a gas station and bought gloves and lighter fluid to burn Price's body. Murray testified

Defendant tossed a gun into an outside trashcan. Murray asked to be left at an acquaintance's house and was dropped off. Defendant and Dickey visited Dickey's family home before driving down the road and throwing Price's body off the edge of an embankment. Defendant and Dickey covered Price's body with sticks and clothes. After disposing of the body, Defendant and Dickey drove to a nearby parking lot where Defendant took a temporary tag from another vehicle and put it on Weaver's car. Defendant and Dickey then fled the state. Dickey testified both she and Defendant intended to get fake IDs in Georgia. Defendant and Dickey were apprehended by law enforcement in Georgia.

On or about 19 February 2021, a grand jury indicted Defendant for First-Degree Murder, First-Degree Kidnapping, and Larceny. This matter came on for trial on 28 November 2023.

At trial, the State questioned Trevor Pitman, a bail bondsman, about his whereabouts on 20 November 2020. The State asked Pitman why he went to the Econo Lodge on the night of the incident. Pitman responded:

> [Pitman]: I'd been out working that night doing pickups. I was on the way home. I got a phone call that Daryl Price and [Defendant] was at the Econo –
>
> [Defense Counsel]: Objection to what he was told, Your Honor.
>
> [Trial Court]: Well, I don't think it's offered for the truth of the matter asserted, is it?
>
> [State's Counsel]: It's offered to –

[Trial Court]: Show his state of mind? All right. I'll overrule the objection. It's offered – not offered for the matter asserted, to show his state of mind.

Defendant's counsel also asked Pitman why he went to the Econo Lodge on cross-examination:

[Defense Counsel]: But why did you go there?

[Pitman]: Mr. Hodge was on bond, [Defendant] was on bond, Daryl Price was on bond.

[Defense Counsel]: Objection. Motion to strike.

[Trial Court]: Overruled. You asked him.

Later, the State introduced body camera footage from various law enforcement officers. State's Exhibit 5 included body camera footage from Officer Michael Lee, the first officer to respond to the Econo Lodge on 20 November 2020. Officer Lee testified Pitman and Weaver were present at the Econo Lodge on the night in question. During Officer Lee's testimony, he acknowledged the audio in the footage is not clear: "There was so much I couldn't hear very good either." Within the footage, an officer says, "This is a lot of big players in this." The trial court admitted Officer Lee's body camera footage for "substantive purposes as well as illustrative." The State also submitted body camera footage from Officer Charles McLaughlin, the second officer to respond to the scene. The trial court entered the exhibit for substantive purposes. Defense counsel did not object to the admission of this footage.

Dickey also testified as a witness for the State. During her testimony, the

State admitted a video of Dickey's post-arrest interview. In the video, Dickey was prompted about Defendant's record and current charges. She responded, "He [Defendant] was already facing 20 . . . for charges he's got pending from what I understand." Defendant did not object to the admission of the video.

At the close of the State's evidence, Defendant moved to dismiss all charges for insufficiency of the evidence. The trial court dismissed the kidnapping and larceny charges. Following the close of all evidence, Defendant renewed his Motion to Dismiss the remaining charge. The trial court denied the renewed Motion.

On 5 December 2023, the jury returned a verdict finding Defendant guilty of First-Degree Murder both on the basis of malice, premeditation and deliberation and pursuant to the felony murder rule. The trial court entered its Judgment sentencing Defendant to life imprisonment without parole. The same day, Defendant gave oral Notice of Appeal in open court.

## Issues

The issues on appeal are whether the trial court erred by: (I) admitting various statements into evidence on the basis they violated Rule 404(b) of the Rules of Evidence by constituting evidence of Defendant's prior bad acts including testimony of the bondsman, bodycam footage, and Dickey's post-arrest interview; and (II) denying Defendant's Motions to Dismiss.

## Analysis

I.      Evidence of Prior Acts

On appeal to this Court, Defendant contends the trial court committed plain error by failing to exclude testimony and evidence under Rule 404(b) because certain statements about Defendant's bad character were irrelevant and prejudicial. Defendant did not object to much of the challenged evidence at trial; thus, our review is limited to plain error. N.C.R. App. P. 10(a)(4) (2024) ("In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.").

With respect to Defendant's argument challenging Pitman's testimony, although Defendant did object to its admission during direct examination by the State, Defendant's objection was not based on Rule 404(b)—the basis for his present challenge. Indeed, from the colloquy with the trial court, the grounds for Defendant's objection are not clear, as defense counsel merely stated: "Objection to what he [Pitman] was told, Your Honor." The trial court seemed to interpret the objection as based on hearsay—governed by Rule 802—stating: "Well, I don't think it's offered for the truth of the matter asserted, is it?" Defendant's counsel did not correct or offer an alternative basis for the objection.

Our Rules of Appellate Procedure provide: "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, *stating the specific grounds* for the ruling the party desired the

court to make if the specific grounds were not apparent from the context." N.C.R. App. P. 10(a)(1) (2024) (emphasis added). In part, "the specificity requirement helps to 'contextualize[ ] the objection for review on appeal, thereby enabling the appellate court to identify and thoroughly consider the specific legal question raised by the objecting party.' " *State v. McLymore*, 380 N.C. 185, 193, 868 S.E.2d 67, 74 (2022) (quoting *State v. Bursell*, 372 N.C. 196, 199, 827 S.E.2d 302, 305 (2019)). Thus, a defendant "preserves only those arguments that he presented to the trial court." *State v. Martinez*, 230 N.C. App. 361, 362, 749 S.E.2d 512, 513 (2013) (citation omitted). Indeed, "[t]his Court has long held that where a theory argued on appeal was not raised before the trial court, 'the law does not permit parties to swap horses between courts in order to get a better mount[.]' " *State v. Sharpe*, 344 N.C. 190, 194, 473 S.E.2d 3, 5 (1996) (quoting *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)) (additional citations omitted).

In *Sharpe*, the defendant argued at trial that certain evidence should be admitted under hearsay exceptions for state of mind and dying declarations, but on appeal he argued the evidence was admissible as statements against penal interest. *Id.* at 195, 473 S.E.2d at 5-6. Our Supreme Court determined the defendant could not raise a new ground for admissibility for the first time on appeal. *Id.* at 195, 473 S.E.2d at 6. Such is the case before us. Here, Defendant objected to Pitman's statement that he went looking for Defendant because Defendant was on bond. The trial court interpreted the objection as based on hearsay, and defense counsel did not

correct or explain otherwise.[1]  Now, on appeal, Defendant asserts Pitman's statement was inadmissible character evidence under Rule 404(b).  Thus, because Defendant did not raise his 404(b) argument at trial, it is not preserved for our review beyond plain error review.

"For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial."  *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citation omitted).  "To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty.' "  *Id.* (citing *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation omitted)); *see also State v. Reber*, 386 N.C. 153, 160, 900 S.E.2d 781, 787 (2024) ("[T]he [plain error] standard requires a showing that it is 'probable, not just possible,' that the outcome would have been different absent the error." (citation omitted)).

Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

---

[1] Even were this not the basis for Defendant's objection at trial, our conclusion would be the same.  Rule 10(a) of our Rules of Appellate Procedure requires a defendant state the grounds for his objection if they are unclear to preserve his objection.  Here, any ground beyond hearsay is not readily apparent from the context or transcript.  Thus, in either case, Defendant's objection based on Rule 404(b) was not preserved.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2023). "The admissibility of *specific acts* of misconduct by the defendant is governed by Rule 404(b)[.]" *State v. Alston*, 341 N.C. 198, 228, 461 S.E.2d 687, 703 (1995) (emphasis added). This Court "interpret[s] Rule 404(b) as a clear general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant[.]" *State v. Maready*, 362 N.C. 614, 622, 669 S.E.2d 564, 569 (2008) (emphasis in original) (citing *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990)). Such evidence is "subject to but one exception" which "requir[es] its exclusion if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *Id.* "When determining whether to admit evidence under Rule 404(b), the trial court must determine: (1) if the evidence is being offered for the purposes expressed in the Rule; and (2) whether the evidence is relevant." *State v. Rodriguez*, 280 N.C. App. 272, 277, 867 S.E.2d 229, 233 (2021), *disc. rev. denied*, 871 S.E.2d 533 (2021) (citing *State v. Bynum*, 111 N.C. App. 845, 848, 433 S.E.2d 778, 780 (1993)).

Here, Defendant contends the trial court erred in admitting the following evidence: (1) Pitman's testimony; (2) body camera footage from police officers; and (3) video of Dickey's post-arrest interview. We address each in turn.

A. *Bail Bondsman's Testimony*

Pitman, a bail bondsman, testified both Defendant and Price were on his "pickup list" for failing to make bond payments. This testimony does not include any specific bad acts by Defendant, nor was the testimony presented as evidence of

Defendant's prior acts. Rather, the trial court found Pitman's testimony showed his state of mind upon driving to the Econo Lodge. "[E]vidence of other offenses is *admissible* so long as it is *relevant to any fact or issue other than* the character of the accused." *State v. Hague*, 295 N.C. App. 380, 398, 905 S.E.2d 798, 812 (2024) (emphasis in original) (citing *State v. Lloyd*, 354 N.C. 76, 88, 552 S.E.2d 596, 608 (2001)). In *Hague*, this Court concluded the defendant's testimony about the victim's felon status was permissible under Rule 404(b). *Id.* at 398, 905 S.E.2d at 811. The "testimony was relevant to [defendant's] state of mind at the time he shot [the victim] and was not prohibited by Rule 404(b)." *Id.*

Here, Pitman's testimony conveyed his state of mind prior to arriving at the Econo Lodge on the night of Price's death.

> [State's Counsel]: And I want to direct you back to November of 2020. Do you remember going to the Econo Lodge the night of November 20th?
>
> [Pitman]: Yes, ma'am.
>
> [State's Counsel]: What brought you there?
>
> [Pitman]: I'd been out working that night doing pickups. I was on the way home. I got a phone call that Daryl Price and [Defendant] was at the Econo –
>
> [Defense Counsel]: Objection to what he was told, Your Honor.
>
> [Trial Court]: Well, I don't think it's offered for the truth of the matter asserted, is it?
>
> [State's Counsel]: It's offered to –

[Trial Court]: Show his state of mind? All right. I'll overrule the objection. It's offered – not offered for the matter asserted, to show his state of mind.

. . . .

[Pitman]: They were supposedly at the Econo. . . . They were on my pickup list.

The trial court determined Pitman's testimony was offered to show Pitman's state of mind. Pitman's testimony about his state of mind was relevant because it explained his arrival at the Econo Lodge: he was looking for Defendant and Price. When asked on cross-examination, Pitman's testimony was the same.

Pitman's statements about Defendant's bond status did not convey "*specific acts* of misconduct" by Defendant but broadly mentioned Defendant's failure to pay bond for unknown reasons. *See Alston*, 341 N.C. at 228, 461 S.E.2d at 703 (emphasis added). Defendant's bond status, like the victim's felon status in *Hague*, was relevant to Pitman's state of mind. *See Hague*, 295 N.C. App. at 398, 905 S.E.2d at 811. Our caselaw allows the admission of evidence offered for other purposes not listed under Rule 404(b) so long as it is not offered to prove character. *See State v. Morgan*, 315 N.C. 626, 637 n.2, 340 S.E.2d 84, 91 n.2 (1986); *see also State v. Everhardt*, 96 N.C. App. 1, 17, 384 S.E.2d 562, 572 (1989) ("This list of other purposes is nonexclusive, and thus evidence not falling within these categories may be admissible."). Thus, we conclude Pitman's statements were presented to show Pitman's state of mind, not

Defendant's prior acts. Therefore, the trial court did not err in admitting those statements.

Further, even if we agreed with Defendant that the admission of this testimony was erroneous, it would constitute invited error because defense counsel affirmatively sought this testimony. On cross-examination, Defendant's counsel asked Pitman why he went to the Econo Lodge. Pitman replied, "Mr. Hodge was on bond, [Defendant] was on bond, Daryl Price was on bond." Defendant contends Pitman's statement was prejudicial; however, Pitman's statement was a short, direct response to an inquiry from Defendant's counsel. "A defendant is not prejudiced . . . by error resulting from his own conduct." N.C. Gen. Stat. § 15A-1443(c) (2023). "Thus, a defendant who invites error has waived his right to all appellate review concerning the invited error, including plain error review. Statements elicited by a defendant on cross-examination are, even if error, invited error, by which a defendant cannot be prejudiced as a matter of law." *State v. Crane*, 269 N.C. App. 341, 343, 837 S.E.2d 607, 608-09 (2020) (citations and quotation marks omitted). Defendant's counsel elicited Pitman's testimony regarding Defendant's bond status by asking Pitman why he went to the Econo Lodge on 20 November 2020, thus any error in admission would be invited error. Therefore, Defendant was not prejudiced by the testimony.

B. *Statements on Body Camera Footage*

Defendant contends the trial court erred in admitting body camera videos containing allegedly prejudicial statements about Defendant's character. One video

showed a conversation between multiple officers in which they consecutively state: "This is a lot of big players in this"; "She's naming all these big names"; "Delarrio, from what it sounded like"; and "Man, this is a mess . . . We got Delarrio." Another video showed an officer stating: "He's a shooter, man." The same video showed an officer gasping in response to Defendant's name.[2]

Regarding videotape evidence, our Supreme Court has noted

> in a criminal case every circumstance calculated to throw any light upon the supposed crime is admissible and permissible[.] It is not required that evidence bear directly on the question in issue, and evidence is competent and relevant if it is one of the circumstances surrounding the parties, and necessary to be known, to properly understand their conduct or motives, or if it reasonably allows the jury to draw an inference as to a disputed fact[.]

*State v. Leazer*, 337 N.C. 454, 457, 446 S.E.2d 54, 56 (1994) (citation omitted) (holding the trial court did not err in admitting a six-minute video of the victim's body being carried away from the crime scene). "Thus, even though evidence may tend to show other crimes, wrongs, or acts by the defendant and his propensity to commit them, it is admissible under Rule 404(b) so long as it also is relevant for some *purpose other than* to show that defendant has the propensity for the type of conduct for which he is being tried." *Coffey*, 326 N.C. at 279, 389 S.E.2d at 54 (citation and quotation marks omitted) (emphasis in original).

---

[2] Defendant's brief recognizes there are "unclear words and cross-talk" in the video. Defendant further states "one of the officers says something like" when attempting to replicate the conversation.

In *State v. Weldon*, we concluded the trial court did not err in admitting a police officer's testimony identifying the defendant via surveillance footage and commenting on the defendant's reputation. 258 N.C. App. 150, 159, 811 S.E.2d 683, 690 (2018). When asked how long he had known of the defendant prior to the underlying incident, the officer responded

> The reputation on the street is how I first beg[a]n associating with the defendant. I had heard his name being talked about on [the] street with people on the street. [Defendant] had got a reputation for causing a lot of issues in the area so I knew who he was. People had already told me who he was. I'd never had any actual direct encounters with him, but knowing who he was I'd seen him in the area.

*Id.* at 158, 811 S.E.2d at 689-90 (alterations in original). This Court rejected the defendant's challenge, noting "Rule 404(b) permits admission of extrinsic conduct so long as the evidence is relevant for some purpose other than to prove the defendant has the propensity to commit the act for which he is being tried." *Id.* at 158, 811 S.E.2d at 689 (quoting *Everhardt*, 96 N.C. App. at 17-18, 384 S.E.2d at 572). We held the police officer's testimony "established [the officer]'s familiarity with defendant's appearance. This provided the basis for [the officer]'s ability to identify the defendant as the individual depicted in the surveillance footage." *Id.* at 158, 811 S.E.2d at 690. Thus, because the officer's testimony "explained the circumstances under which he had become familiar with defendant over the course of two months, his testimony was relevant for a purpose other than to establish defendant's character." *Id.* at 158-59,

811 S.E.2d at 690. Therefore, the Court concluded the officer's testimony was not impermissible character evidence under Rule 404(b). *Id.* at 159, 811 S.E.2d at 690.

Here, Defendant argues certain statements made by law enforcement on body camera videos violated Rule 404(b) because the statements were irrelevant and prejudicial. We disagree.

At the outset, the statements at issue in the body camera footage are not "specific acts" nor other "crimes, wrongs, or acts" governed by Rule 404(b). *Alston*, 341 N.C. at 228, 461 S.E.2d at 703. Rather, like Pitman's testimony, the challenged statements here are more general aspersions because they do not refer to any particular instance, event, or offense Defendant is purported to have committed. At most, the statements in the footage refer to Defendant's general reputation and the officers' familiarity with him.

Even if the statements in the footage fell under Rule 404(b), they would still be admissible as evidence of the officers' investigatory process and to explain their subsequent conduct. "Evidence 'offered to explain the conduct of a witness [is] relevant and admissible[.]'" *State v. McCutcheon*, 281 N.C. App. 149, 153, 867 S.E.2d 572, 577 (2021) (quoting *State v. Roper*, 328 N.C. 337, 356, 402 S.E.2d 600, 611 (1991)). This Court has concluded a trial court did not err in admitting a report detailing a 911 call because it "provide[d] jurors with explanatory information" regarding the call's effect on a detective's subsequent conduct. *State v. Davenport*, _ N.C. App. _, _, 910 S.E.2d 750, 756 (2025). The report was relevant, and therefore

admissible, because the call influenced the detective's subsequent conduct. *Id.*; *see also* N.C. Gen. Stat. § 8C-1, Rule 402 (2023) ("All relevant evidence is admissible, except as otherwise provided . . .").

In the case *sub judice*, the trial court admitted the body camera videos as illustrative evidence of the officers' conduct when responding to the Econo Lodge. The body camera footage shows the officers reporting to the scene and the events occurring shortly thereafter. Like *Weldon*, the challenged testimony does not mention specific prior bad acts but merely refers to Defendant's general reputation. And, as in *Weldon*, the officers' familiarity with Defendant explained their subsequent conduct, such as contacting a superior officer and coordinating a search for Price's body. Thus, the videos explained the officers' conduct to the jury. *See Davenport*, 910 S.E.2d at 756 (holding evidence explaining conduct by law enforcement is relevant and admissible under Rules 401 and 402). Therefore, the officers' statements were not inadmissible character evidence under Rule 404(b).

Further, even if the statements on the body camera footage were inadmissible, Defendant has not shown he was prejudiced by their admission. "[E]ven if the admission of [evidence] was error, in order to reverse the trial court, the appellant must establish the error was prejudicial. If the other evidence presented was sufficient to convict the defendant, then no prejudicial error occurred." *State v. James*, 224 N.C. App. 164, 166, 735 S.E.2d 627, 629 (2012) (quoting *State v. Bodden*, 190 N.C. App. 505, 510, 661 S.E.2d 23, 26 (2008) (citations omitted)). "The burden of

showing such prejudice . . . is upon the defendant." *State v. Bellamy*, 172 N.C. App. 649, 661, 617 S.E.2d 81, 90 (2005) (citation omitted). "A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2023).

Here, had the body camera footage been excluded, the remaining evidence was sufficient for the jury to find Defendant guilty of first-degree murder. First, Weaver testified she saw both Defendant and Price with firearms and she saw Defendant point a gun at Price first. She stated that after exiting the room, she heard multiple gunshots. Further, Weaver testified she later helped Dickey dispose of Price's body in a field. Additionally, Dickey testified she overheard Defendant speaking with Murray on the phone and heard Murray tell Defendant that Price was coming over and would have money and drugs. Dickey also testified to preexisting ill-will between Defendant and Price. Further, she stated she saw Defendant stand over Price and tell him to "give [Defendant] the money." According to Dickey, Defendant pointed a gun at Price, and while Dickey's head was turned, she heard two gunshots. Dickey also testified to taking Defendant to remove Price's body from the field, taking steps to burn the body, and ultimately disposing of it by dropping it off an embankment. She also recounted Defendant taking and disposing of her phone, as well as Price's

phone, switching the tag on the vehicle Defendant and Dickey were in with the temporary tag from another vehicle, and attempting to get fake IDs.

In light of the substantial evidence of Defendant's guilt, there was not a reasonable possibility the jury would have reached a different verdict absent the admission of the body camera footage. Therefore, the trial court did not commit reversible error by admitting the body camera footage.

C. *Dickey's Interview*

Defendant argues the trial court erred in admitting video of Dickey's post-arrest interview because the video contained a statement referencing Defendant's criminal record. When prompted about Defendant's record and current charge, Dickey responded "He already was facing 20 . . . for charges he's got pending from what I understand."

Although Dickey's post-arrest interview alluded to Defendant's prior criminal record, admission of the video was not plain error. In *State v. Barker*, the trial court did not err in admitting a videotaped recording of the defendant's post-arrest interview when the defendant failed to object to the video. 240 N.C. App. 224, 236, 770 S.E.2d 142, 150-51 (2015). The defendant "contend[ed] the admission of the video recording was highly prejudicial because the recording contained evidence regarding defendant's prior criminal history, drug use, and 'habit of frequenting strip clubs[,]' and that this evidence of defendant's bad character violated Rule 404(b)." *Id.* at 236, 770 S.E.2d at 150. This Court concluded the admission was not error because

"defendant knew the contents of the video . . . yet he chose not to object to the video, either in its entirety or any portion of it, at trial." *Id.* Further, the defendant was not prejudiced by the recording because "it [was] not probable that the jury could have reached a different verdict had the trial court not admitted the videotaped interview." *Id.* at 236, 770 S.E.2d at 151.

Here, Defendant contends the trial court erred in admitting Dickey's post-arrest interview because it contained commentary on Defendant's criminal record and previous charges. Not only does Dickey's statement fail to delineate Defendant's specific crimes, but the State also offered the video to corroborate Dickey's testimony—not as evidence of Defendant's prior criminal acts. Thus, the video was admitted for a permissible purpose. *See State v. Bagley*, 321 N.C. 201, 206, 362 S.E.2d 244, 247 (1987) ("[E]ven though evidence may tend to show other crimes, wrongs, or acts by the defendant and his propensity to commit them, it is admissible under Rule 404(b) so long as it also 'is relevant for some purpose *other than* to show that the defendant has the propensity for the type of conduct for which he is being tried.' " (quoting *Morgan*, 315 N.C. at 637, 340 S.E.2d at 91) (emphasis in original)).

Even if the trial court erred in admitting Dickey's post-arrest interview, we are not convinced the admission rises to the level of plain error. Substantial evidence, including testimony from multiple witnesses, placed Defendant in the same room as Price when Price was shot. Afterwards, the evidence reflects Defendant considered burning the body, threw the body off an embankment, attempted to conceal the body,

threw away cell phones, switched car tags, and fled the state. Dickey's testimony reveals Defendant intended to conceal his identity by obtaining a fake ID. Thus, based on this evidence, we cannot conclude the jury likely would have reached a different result had Dickey's testimony been excluded. Therefore, Defendant has not established the prejudice necessary to meet the bar for plain error.

II.     Motions to Dismiss

Defendant contends the trial court erred in denying his Motions to Dismiss the First-Degree Murder charge. "This Court reviews the trial court's denial of a motion to dismiss *de novo.*" *State v. Jackson*, 293 N.C. App. 135, 137, 899 S.E.2d 399, 401 (2024) (citation omitted). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *Id.* (citing *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980). "If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed." *Fritsch*, 351 N.C. at 378, 526 S.E.2d at 455 (citation omitted).

"In making its determination, the trial court must consider all evidence

admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation omitted). "Whether the State has offered such substantial evidence is a question of law for the trial court." *State v. McKinney*, 288 N.C. 113, 119, 215 S.E.2d 578, 583 (1975) (citations omitted).

In the present case, Defendant moved to dismiss the First-Degree Murder charge for insufficient evidence. Our General Statutes set out the offense of first-degree murder in pertinent part as follows:

> A murder which shall be perpetrated by means of . . . any . . . kind of willful, deliberate, and premeditated killing, or which shall be committed in the perpetration or attempted perpetration of any . . . robbery . . . or other felony committed or attempted with the use of a deadly weapon[.]

N.C. Gen. Stat. § 14-17(a) (2023).

The State presented two theories of first-degree murder to the jury: (1) premeditation and deliberation and (2) felony-murder based on the felony of attempted robbery.

A. *Premeditation and Deliberation*

Here, Defendant contends the trial court erred in denying his Motions to Dismiss because the State failed to present substantial evidence Defendant perpetrated the murder with premeditation and deliberation. Specifically, Defendant asserts his attempt to cover up the killing is the only factor weighing toward

premeditation. We disagree.

"Premeditation means that the act was thought over beforehand for some length of time, however short. Deliberation means an intent to kill, carried out in a cool state of blood, . . . and not under the influence of a violent passion or a sufficient legal provocation." *State v. Taylor*, 362 N.C. 514, 531, 669 S.E.2d 239, 256 (2008) (quoting *State v. Leazer*, 353 N.C. 234, 238, 539 S.E.2d 922, 925 (2000)) (alterations in original). In determining whether a killing was committed with premeditation and deliberation, we consider:

> (1) want of provocation on the part of the deceased; (2) the conduct and statements of the defendant before and after the killing; (3) threats and declarations of the defendant before and during the occurrence giving rise to the victim's death; (4) ill-will or previous difficulty between the parties; (5) evidence that the killing was done in a brutal manner; and (6) the nature and number of the victim's wounds.

*State v. Walker*, 286 N.C. App. 438, 442, 880 S.E.2d 731, 736 (2022) (quoting *State v. Pitman*, 332 N.C. 244, 255, 420 S.E.2d 437, 443 (1992)).

In *State v. Williams*, this Court concluded the "defendant's actions before and after the shooting did not show planning or forethought on his part. After committing the crime in front of a crowd of bystanders, defendant left the scene immediately but turned himself in the next day." 144 N.C. App. 526, 531, 548 S.E.2d 802, 805 (2001). Conversely, in *State v. Battle*, our Supreme Court affirmed a judgment for first-degree murder because "[t]he cumulative effect of the[] actions and statements by the defendant [were] more than sufficient evidence of a deliberate and premeditated

killing so as to support a judgment of first degree murder." 322 N.C. 69, 73, 366 S.E.2d 454, 457 (1988) (citation omitted). The Court explained the defendant stating "that mother-fucker is dead" after the shooting was evidence the defendant lacked remorse for the killing. *Id.* Additionally, the defendant enlisted two witnesses to help him dispose of the body. *Id.*

Here, Defendant helped Price leave the house and get into Weaver's car before telling Dickey and Weaver to drive Price to the hospital. Murray testified Defendant then cleaned Price's blood off himself. After some time, Defendant called Dickey and asked, "Did the dog make it to the pound?" Following Price's death, Defendant retrieved his body from the field with Dickey and Murray. He then obtained materials to burn the body before ultimately throwing it off an embankment and concealing it with sticks and clothing. Dickey testified that she remained with Defendant while he disposed of Price's body and subsequently fled the state with him.

Defendant contends an attempt to "cover-up" a body alone is insufficient evidence of premeditation and deliberation. Here, however, the jury considered more than Defendant's attempt to cover-up Price's body: there was also evidence of Defendant's subsequent flight from the crime scene and conduct prior to the shooting. "Evidence of flight . . . is admissible as evidence tending to show the defendant's guilt." *State v. McDougald*, 336 N.C. 451, 456, 444 S.E.2d 211, 214 (1994) (citation omitted). "A trial court may not instruct a jury on defendant's flight unless there is some evidence in the record reasonably supporting the theory that defendant fled

after commission of the crime charged." *State v. Anthony*, 354 N.C. 372, 425, 555 S.E.2d 557, 590 (2001) (citations omitted). "Mere evidence that defendant left the scene of the crime is not enough to support an instruction on flight. There must also be some evidence that defendant took steps to avoid apprehension." *Id.* at 425, 555 S.E.2d at 591 (citation and quotation marks omitted); *see also State v. Grooms*, 353 N.C. 50, 80, 540 S.E.2d 713, 732 (2000) ("The relevant inquiry is whether the evidence shows that defendant left the scene of the crime and took steps to avoid apprehension.").

Here, the evidence shows Defendant left the crime scene and took steps to intentionally evade law enforcement. Defendant threw Price's body off an embankment and covered Price's body with sticks and clothes. Defendant disposed of his and Price's cell phones and SIM cards. He took the temporary tag from another vehicle and put it on the car he was driving before leaving the state to travel to Georgia. Defendant was ultimately taken into custody in Georgia where he and Dickey were attempting to obtain fake IDs. This is substantial evidence Defendant intended to evade law enforcement indefinitely. *See State v. Davis*, 226 N.C. App. 96, 98-99, 738 S.E.2d 417, 419 (2013) (affirming sufficient evidence of flight where the defendant left the state of the crime, North Carolina, to return to Florida).

In addition, the Record reflects a history of ill-will between Defendant and Price. In *State v. Corn*, our Supreme Court concluded the trial court erred in denying the defendant's motion to dismiss his First-Degree Murder charge because the

evidence was insufficient to show premeditation and deliberation. 303 N.C. 293, 298, 278 S.E.2d 221, 224 (1981). There, the defendant "did not threaten [the victim] before the incident or exhibit any conduct which would indicate that he formed any intention to kill him prior to the incident in question. There was no significant history of arguments or ill will between the parties." *Id.* at 298, 278 S.E.2d at 224. Rather, "[t]he shooting was a sudden event, apparently brought on by some provocation on the part of the deceased." *Id.* at 297, 278 S.E.2d at 223. The victim entered the house in an intoxicated state, walked over to the couch on which the defendant was lying, and insulted him, causing the defendant to grab a rifle kept near the sofa and shoot the victim. *Id.* at 297-98, 278 S.E.2d at 223-24. The Court concluded "[t]here [was] no evidence that defendant acted in accordance with a fixed design or that he had sufficient time to weigh the consequences of his actions." *Id.* at 298, 278 S.E.2d at 224.

In the case *sub judice*, Defendant arranged for Price to come to Hodge's house. Murray testified she was hesitant to enter the house because "normally there's like a driveway full of cars and there's people going in and out" of the house, but that was not the case on the day of the shooting. Defendant concedes he knew Price was coming to the house. In fact, Defendant was standing in the living room—armed— when Price arrived. Further, the evidence reflects a long history of disputes between Defendant and Price, such that Price was hesitant to go to the house and engage with Defendant at all. Dickey testified to the "old beef" between Defendant and Price.

Murray testified Defendant and Price "had been arguing for a while." Thus, the prior ill-will between Defendant and Price was evidence of premeditation and deliberation. *See State v. Watson*, 338 N.C. 168, 177-78, 449 S.E.2d 694, 700-01 (1994) (explaining ill-will between the defendant and the victim constitutes evidence of premeditation and deliberation), *overruled in part on other grounds, State v. Richardson*, 341 N.C. 585, 597, 461 S.E.2d 724, 731 (1995); *cf. Williams*, 144 N.C. App. at 530, 548 S.E.2d at 805 (reversing first-degree murder conviction where "there was no evidence that defendant and [the victim] knew each other before the altercation[.]").

Defendant's brief highlights the "escalating argument" between Defendant and Price prior to the shooting and contends there is insufficient evidence of premeditation and deliberation without "definitive evidence of what they were fighting about." However, "[e]vidence of a verbal altercation does not serve to negate a charge of first-degree murder when 'there was other evidence to support the jury's finding of both premeditation and deliberation.' " *Walker*, 286 N.C. App. at 443, 880 S.E.2d at 736 (quoting *Watson*, 338 N.C. at 178, 449 S.E.2d at 700-01). Here, there is sufficient evidence beyond the verbal altercation to support the jury's finding of premeditation and deliberation.

The evidence presented at trial tends to show Price did not provoke Defendant before the shooting, nor did Price show any sign of provocation during or after the shooting. Both Weaver and Dickey testified Defendant stood over Price in the living room. Dickey further testified Defendant demanded money from Price prior to the

shooting. In contrast to *Corn*, where the victim approached the defendant while he was seated and continued moving towards the defendant during the altercation, 303 N.C. at 295, 278 S.E.2d at 222, the Record in this case is devoid of any evidence Price provoked Defendant. Rather, immediately after sustaining the gunshot wound Price stated: "Please, just let me leave. I won't call the police."

Thus, there was sufficient evidence to support the charge of First-Degree Murder to be submitted to the jury on a theory it was committed with premeditation and deliberation. Therefore, the trial court did not err in denying Defendant's Motions to Dismiss.

B. *Felony Murder*

"Felony murder elevates a homicide to first-degree murder if the killing is committed in the perpetration or attempted perpetration of certain felonies or any 'other felony committed or attempted with the use of a deadly weapon[.]' " *State v. Frazier*, 248 N.C. App. 252, 262, 790 S.E.2d 312, 320 (2016) (quoting N.C. Gen. Stat. § 14-17(a)). Here, Defendant contends the trial court erred in denying his Motions to Dismiss because the State failed to present substantial evidence Defendant committed the predicate felony—attempted robbery—to be found culpable of felony murder. "[A]n attempted robbery with a dangerous weapon occurs when a person, with the specific intent to unlawfully deprive another of personal property by endangering or threatening his life with a dangerous weapon, does some overt act to

bring about th[at] result." *State v. Wilson*, 385 N.C. 538, 545, 895 S.E.2d 355, 362 (2023) (citation omitted); *see also* N.C. Gen. Stat. § 14-87(a) (2023).

Defendant first contends the State failed to prove he intended to unlawfully deprive Price of money. However, Dickey's testimony contradicts this claim. Dickey testified she overheard a phone call between Defendant and Murray prior to Price's arrival at the house in which Murray told Defendant that Price "had money and drugs on him[.]" Murray testified Defendant asked her if Price "had money on him." When Defendant ended the call, Dickey told him "[n]ot to do whatever he planned to do." Both Dickey's and Murray's testimony is evidence of Defendant's intent to unlawfully deprive Price of money. Dickey also testified Defendant repeatedly told Price to "give him the money" during their altercation. Defendant argues the testimonies of Weaver, Murray, and Dickey are contradictory, and therefore insufficient to support the State's attempted robbery theory. However, even to the extent this is so, "[e]videntiary 'contradictions and discrepancies are for the jury to resolve and do not warrant dismissal.' " *State v. McNeil*, 359 N.C. 800, 804, 617 S.E.2d 271, 274 (2005) (quoting *State v. Garcia*, 358 N.C. 382, 413, 597 S.E.2d 724, 746 (2004)). Thus, the trial court did not err in submitting the felony murder charge to the jury under an attempted robbery theory because there was sufficient evidence Defendant intended to unlawfully deprive Price of money.

Defendant subsequently contends Dickey's testimony is not credible. This Court does not re-weigh the credibility of witnesses on appeal. Trial courts have the

"opportunity to see the parties; to hear the witnesses; and to detect tenors, tones, and flavors that are lost in the bare printed record[.]" *Shipman v. Shipman*, 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003) (citations and quotation marks omitted). Therefore, "[d]etermination of the witness's credibility is for the jury." *State v. Espinoza-Valenzuela*, 203 N.C. App. 485, 494, 692 S.E.2d 145, 153 (2010) (citing *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988)). Further, this Court has found the testimony of one witness, with contested credibility, to be sufficient evidence to uphold a conviction for robbery with a dangerous weapon. *State v. Jackson*, 215 N.C. App. 339, 345, 716 S.E.2d 61, 66 (2011).

Even assuming arguendo Dickey's testimony was not credible, there is still sufficient evidence to support the State's theory of attempted robbery. In *State v. Legrand*, this Court affirmed a trial court's denial of a motion to dismiss a charge of attempted robbery when the defendant displayed a gun, threatened its use, and made an obvious implied demand to the victim. 289 N.C. App. 572, 577, 891 S.E.2d 1, 4 (2023). Here, the unchallenged evidence tends to show Defendant had asked whether Price was carrying money and was armed and waiting in the living room for Price to arrive. Weaver testified Defendant pointed his gun at Price first. Defendant then told Price to "give him the money, give him his money."

Thus, there was sufficient evidence to support the charge of First-Degree Murder to be submitted to the jury on a theory it was committed in the perpetration of attempted robbery. *See Legrand*, 289 N.C. App. at 577, 891 S.E.2d at 4. Therefore,

the trial court did not err in denying Defendant's Motions to Dismiss. Consequently, the trial court did not err in entering Judgment upon the jury verdict.

## **Conclusion**

Accordingly, for the foregoing reasons, there was no error at trial, and we affirm the Judgment.


NO ERROR.

Judges COLLINS and CARPENTER concur.

Report per Rule 30(e).